MUNDY v. MUNDY.

1. Deeds—Conspiracy—Fraud—Undue Influence.
    In suit to set aside deeds of deceased grantor, brought by his son against his stepmother, who had been deceased's sister-in-law before the death of their respective spouses, and her two daughters, alleged conspiracy on part of defendants to obtain deceased's property through fraud or undue influence *held*, not established.

2. Husband and Wife—Vendor and Purchaser—Transfer of Vendor's Interest.
    Vendor's transfer of his interest in real estate, by proper conveyances to himself and wife and the survivor, so conveyed title that upon his death the vendor's interest did not become an asset of his estate but vested title in the wife without a written assignment of the land contract having been executed.

3. Vendor and Purchaser—Effect of Vendor's Conveyance to Another.

    The conveyance of land by a vendor subject to an outstanding contract operates as an assignment to the grantee of the contract between the vendor and the purchaser, and entitles the grantee to the purchase money outstanding although the conveyance is by quitclaim deed, unless there is an agreement to the contrary, or unless purchase-money notes have been given and transferred by the vendor to a third person for value.

4. Appeal and Error—Conduct of Trial.

    Claims of error in rulings as to admissibility of testimony, burden of proof, and conduct of counsel are of less consequence in equity cases and law cases heard without a jury than in appeals from judgments after trial by jury.

Appeal from Shiawassee; Collins (Joseph H.), J. Submitted January 7, 1941. (Docket No. 10, Calendar No. 41,363.) Decided March 11, 1941.

Bill by Claude A. Mundy, individually and as administrator of the estate of John E. Mundy, deceased, against Florence E. Mundy and others to have certain deeds conveying real estate declared null and void, to set aside a transfer of personal property, for an accounting and other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Pardee & McCrea,* for plaintiff.

*Seth B. Terry (Hicks & DesJardins,* of counsel), for defendants.

North, J. This is a suit in chancery by Claude A. Mundy in his individual right and as administrator of the estate of his father, John E. Mundy, deceased. The relief sought is cancellation of deeds through which defendant Florence E. Mundy obtained title to real estate theretofore owned by John E. Mundy.

Plaintiff also seeks cancellation of a bill of sale under which Florence E. Mundy claims she obtained title from the deceased to certain personal property, and plaintiff further asks for an accounting and incidentally for injunctive relief. After full hearing in open court, the circuit judge entered a decree dismissing the bill of complaint. Plaintiff has appealed.

Plaintiff's claim of relief is based upon alleged conspiracy, fraud and undue influence on the part of defendants and by means of which he asserts defendant Florence E. Mundy obtained title to the property in suit. It would be quite a hopeless and useless task to attempt to embody in our opinion all the detailed circumstances, some of which are decidedly trivial, in consequence of which appellant asserts that the testimony taken in the trial court should be held to establish his right to relief and that the circuit judge was in error in entering a decree denying relief. But in general the circumstances and testimony bearing upon the controlling aspect of this case may be summarized as follows.

John E. Mundy's wife, Agnes E. Mundy, died April 13, 1936. For approximately a year and a half thereafter John continued to reside on his farm with plaintiff's daughter and her husband, Mr. and Mrs. Donald Billsbrough. At that time John's brother, Fred Mundy, was living. Defendant Florence E. Mundy was the wife of Fred, and defendants Marjorie and Irene are their daughters. Fred's family was in straitened circumstances, and at least for a time was receiving public welfare aid. Seemingly John E. Mundy became interested in helping Fred's family. In May, 1937, John purchased about 6 acres of land on which there was a dwelling and other suitable buildings, located near the village of Perry, Shiawassee county. On August 9, 1937, John E. Mundy sold his farm home in Gaines township, Gen-

esee county, on a land contract for $8,000 to Mr. and Mrs. Billsbrough. About this time he had an auction of chattels on the home farm at which sales totalled nearly $1,300. In October, 1937, John went to live with Fred's family on the place near Perry. In November, 1937, John deeded this property to his brother's wife, reserving a life estate; and on January 4, 1938, John placed the title of his automobile in the names of himself and Florence Mundy. Her husband, Fred Mundy, died April 24, 1938. The following November 15th, Florence and John E. Mundy were married. On January 3, 1939, John by proper conveyances placed title to the 80-acre home farm in Gaines township jointly in himself and his wife; but no change appears to have been made in John's interest as vendor in the Billsbrough contract on which his farm had been sold. At this same time John also gave to his wife a bill of sale of all his personal property. John and his wife continued to live together on the Perry property until his death January 24, 1939. He was then 71 years of age and his death was primarily caused by carcinoma of the liver.

Several witnesses testified that before the summer of 1936, when the girls visited and stayed at the John E. Mundy farm for two or three months, the defendants had seldom visited at John E. Mundy's home and that there was no indication of intimacy, love or affection existing between John E. Mundy and defendants. There was evidence that when defendant Florence E. Mundy appeared at the funeral of Agnes J. Mundy, John's first wife, he remarked, "I don't know what we want of her." And it is contended this remark was indicative of the feeling previously existing between John and the defendants. Evidence was also introduced by which it was sought to show that, when defendants Marjorie and Irene

visited the farm in the summer of 1936, "they indulged in the unusual demonstrative conduct of embracing and kissing their uncle, John E. Mundy, regularly and excessively, and so ardently that such conduct occurred in public places." Plaintiff contends this conduct was all a part of this plan, scheme, and design to perpetrate a fraud upon John E. Mundy and to deprive him of his property. As indicative of the fact that a plan was afoot, testimony was introduced to the effect that during their stay at the farm the girls wrote to and received letters from their mother, Florence E. Mundy, and they did not show their mother's letters to other members of the household, but instead took the precaution to go into another room to read them. Much stress is placed by plaintiff on a letter written by Marjorie to her mother but never mailed. This letter was found by Mrs. Billsbrough, granddaughter of John E. Mundy and daughter of plaintiff. It contains among other things the following statement: "We aren't asking for a thing & aren't taking money although we could drain the old mans purse." Plaintiff contends that the phrase "drain the old mans purse" clearly shows the state of mind and the intention of defendants to strip John E. Mundy of his property.

In answer to the above claims as to the existence of a conspiracy, both girls testified at the trial. They deny excessive and pretended displays of affection for the purpose of getting their uncle's property. They also denied that they had ever asked him to do anything for them. Some of the testimony by plaintiff's witnesses as to excessive displays of affection was qualified on cross-examination. There is other evidence in the record to indicate that John E. Mundy was interested in the family and concerned with the health and welfare of his brother, Fred Mundy, and Fred's family, defendants herein. Such

testimony contradicts and minimizes to a great extent the force of plaintiff's contentions. There was testimony that Irene had worked on the farm as a maid before the death of her Aunt Agnes and that John E. Mundy had invited the girls to visit him at the farm. The sinister significance attributed to the letter written by Marjorie is largely overcome by testimony showing that John E. Mundy was made aware of the letter and its contents by Claude Mundy, the plaintiff. And there was testimony that John and Marjorie went to the home of Claude where the letter and its meaning were discussed, after which Claude promised to destroy the letter and John considered the matter dropped, having previously stated, "I can't see as there is anything about that to feel so upset over." And, further, Marjorie testified relative to the statement of draining the old man's purse that the meaning intended to be conveyed was that "Uncle John was very willing to do, * * * and he was very generous" with the witness and her sister, Irene, and also with his granddaughter, Mildred Billsbrough.

It is also claimed that Florence E. Mundy "engineered" the buying of the Perry property and that she accompanied John on business trips. Plaintiff sought to show that, as a result of John's almost continuous illness during the last two years of his life, he was weakened in body and mind and was more easily submissive and prone to become the prey of defendants. A review of the testimony, however, some of which was given by doctors and by the attorneys who executed the deeds in question, indicates quite conclusively that John E. Mundy was in full possession of his mental faculties until January 18, 1939, less than a week before his death. And as bearing upon the physical condition of John E. Mundy just shortly before his death, plaintiff's witness

gave testimony which is summarized in plaintiff's brief as follows: "that he [John E. Mundy] plowed the day it froze up, the last day anybody could plow in 1938, which the witness thinks was in the month of December."

As indicative of John E. Mundy's intentions in regard to the disposition of his property before the time defendants began their alleged wrongful activities, many witnesses testified that he had made statements showing he planned to leave his property to his children. Much is made of a statement attributed to Florence E. Mundy to the effect John wanted his property to go to his grandchildren after Florence's death, and plaintiff contends that the change in the disposition of the property was due to the exercise of undue influence and fraud. The answer of defendants to these contentions consists of testimony in the record to the effect that John needed and was given constant care and attention by defendants over a long period because of his illness, which was cancerous in nature. There was some dispute in the testimony as to the amount of care required and given. Defendants also contend that the feelings of John E. Mundy were hurt and that he became estranged from his son as a result of a dispute over division of certain household goods in October, 1937. This is contradicted by testimony introduced by plaintiff. There is also disputed testimony to the effect that Claude had already received a major portion of the substantial property which he owned at the time of the trial through the help and assistance of his father and from the estate of his mother. And, further, that Claude had received the major portion of the proceeds of a $10,000 insurance policy on the life of his brother Roy, notwithstanding the policy was payable to his parents. Testimony was taken on many matters which, to say the least, are

not very material to a disposition of the case but which are indicative of the feeling between the parties to this suit; such as testimony of spreading rumors to the effect that John E. Mundy's death was caused by poisoning and the testimony relevant to allegations of insanity of Agnes J. Mundy in defendants' answer.

It is not necessary nor would it be helpful to review in further detail the testimony bearing upon the contentions of the respective parties to this suit. We are in accord with the conclusion of the trial judge that plaintiff's contention that there was a conspiracy between Florence Mundy and her two daughters to obtain through fraud or undue influence the property possessed by John E. Mundy was not established; and therefore the bill of complaint was properly dismissed as to defendants Marjorie and Irene. Nor do we find any merit in plaintiff's claim that since John E. Mundy did not by written assignment transfer his interest as vendor in the Billsbrough contract for the purchase of the Gaines township farm, this interest did not pass to Florence Mundy but instead remained in John E. Mundy and is now an asset of his estate. Instead, when by proper conveyances the title to this farm became vested in "John E. Mundy and Florence E. Mundy, his wife and to the survivor," the vendor's interest in the land contract theretofore given on this farm became vested in John and Florence with right of survivorship. *Vos* v. *Dykema,* 26 Mich. 399; *American Cedar & Lumber Co.* v. *Gustin,* 236 Mich. 351; *Detroit & Security Trust Co.* v. *Kramer,* 247 Mich. 468.

"Where a vendor having contracted to convey land to a purchaser conveys the land to a third person subject to the contract, the conveyance operates as an assignment of the contract between the vendor and purchaser. As a consequence the grantee is

entitled to the purchase money outstanding on the contract although the conveyance is by quitclaim deed, unless there is an agreement to the contrary, or unless purchase-money notes have been given and transferred by the vendor to a third person for value." 66 C. J. p. 1062.

We have reviewed appellant's claims of error in the trial court's rulings as to admissibility of testimony, also appellant's claim as to the burden of proof and of prejudicial misconduct on the part of opposing counsel, but we do not find justification for setting aside the decree dismissing plaintiff's suit. Complaints of the character just above noted are of less consequence in equity cases and law cases heard without a jury than in appeals from judgments after trial by jury. This appeal on the equity side of the court has been considered *de novo*. We are impressed, as was the circuit judge, that the deeds assailed by plaintiff were prepared by practicing attorneys of high standing who gave testimony as to important facts of which they had knowledge. Likewise, the doctors who gave testimony as to John E. Mundy's physical and mental condition were men whose professional ability and standing were not challenged. On the other hand a number of the witnesses who gave material testimony in behalf of plaintiff were more or less closely related to him, among them his wife and adult children. There was sharp conflict in much of the testimony. The trial judge had the advantage not only of hearing but of observing the witnesses. We are of the opinion that the record justifies the decree entered. It is affirmed, with costs to appellee.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, McALLISTER, WIEST, and BUTZEL, JJ., concurred.