HERBERT C. SHOCKLEY, WILLIAM H. SHOCKLEY, ELWOOD SHOCKLEY, EMMA (SHOCKLEY) TOWNSEND, CLARA (SHOCKLEY) BARKER, ALBERT SHOCKLEY, MARY (SHOCKLEY) SCHETZLER, AVIS SHOCKLEY,

*vs.*

ELIZABETH HALBIG, AVERY R. SHOCKLEY and MABEL (SHOCKLEY) GRIFFITH.

*New Castle, September 15, 1950.*

*Henry A. Wise, Jr.*, of Hastings, Stockly, Walz & Wise, for plaintiffs.

*Thomas Herlihy, Jr.*, for defendants.

SEITZ, Vice Chancellor: Plaintiffs seek to have a trust impressed on a certain piece of real estate now held of record by two of the defendants.

By deed dated July 27, 1944, Mrs. Anna Shockley conveyed record title to 606 West Sixth Street, Wilmington, to her son Avery Shockley and daughter Elizabeth Halbig as joint tenants. Plaintiffs, being eight brothers and sisters of Avery and Elizabeth, attack the validity of the conveyance—Anna Shockley having since died. The conveyance was made, in my opinion, at a time when she was fully aware of the nature of her acts and not subject to any undue influence. There was conflicting evidence on some of these issues, but I was impressed with the substance of the evidence which upholds the conclusions I have just stated.

I shall attempt to reconstruct the drama as it took place during the period here pertinent.

Mrs. Shockley reared a large family. In 1944, and for some time prior thereto, she was separated from her

husband. In 1944 most of her children were living away from her home. Many of the children did not "get along", and many of them had little if any intimate connection with the home. I am inclined to believe that Mrs. Shockley felt a particular affection for her daughter Elizabeth and her son Avery even though she was fond of all her children. Elizabeth, who was separated from her husband, had no home of her own. I gained the impression that she was much more considerate of her mother's feelings than some of the other children. Avery was the youngest child. He was unmarried and lived at home. At the time of the conveyance he was in the service and his mother received his allotment. Even some of the plaintiffs admitted that their mother was particularly fond of Avery. An impartial witness stated that Mrs. Shockley told her that she was transferring the home to Elizabeth and Avery because they had no home of their own.

Defendants contend that the conveyance was absolute. The plaintiffs argue that their mother conveyed the property in trust to Elizabeth and Avery for the benefit of all the children. This was supposedly done, they say, to prevent their father from taking a curtesy interest. I do not believe that the conveyance was made for that purpose because it could not have had that effect and Mrs. Shockley's attorney testified that he so advised her. The mention of a joint tenancy also suggests that the mother wanted the property to belong to the survivor.

I conclude that Mrs. Shockley intended to make an outright conveyance of her property by way of gift to Elizabeth and Avery, having full confidence that Elizabeth and Avery would not challenge her right to live out her days in the home. Mrs. Shockley was neither young nor well when she conveyed the property. The essentials of a valid gift were present because I find that Mrs. Shockley intended to make a gift; being beneficial, the acceptance of the gift will be presumed. There was also a sufficient relinquishment of domination and control by the mother

when we consider the relationship between the parties and the unequivocal record transfer.

The plaintiffs point to the fact that Mrs. Shockley in a will executed June 25, 1945, purported to include her real estate therein. I think this is explainable in the light of what happened between the date of the conveyance in 1944 and the date of the execution of the will in 1945. In this interim at least one of the plaintiffs had discovered that Mrs. Shockley conveyed the home to Elizabeth and Avery. Thereafter she persistently nagged her mother in an attempt to have her mother ask for a reconveyance of the property. In order to avoid further unpleasantness Elizabeth finally told her mother that she would reconvey. Mrs. Shockley and Elizabeth went to the office of Mrs. Shockley's lawyer and there the mother's will of June 25, 1945, was drawn. At the same time a deed was drawn whereby Avery and Elizabeth would reconvey the property. Elizabeth signed the deed after being judicially determined to have been unjustly abandoned by her husband. Then the deed was apparently sent overseas to Avery for his signature. Avery testified that he never received the deed. In fact the deed never has been found. The will was obviously executed on the assumption that Avery would sign and the property would therefore pass under the will.

After the mother's death, the defendants took the position that the property belonged to them absolutely. Hence the lawsuit.

The deed from Mrs. Shockley to Elizabeth and Avery in 1944 was an absolute conveyance to them as joint tenants. Elizabeth admittedly intended to reconvey the property to her mother in 1945 and her actions had that effect even though the deed is lost. One joint tenant can convey his interest and thus destroy the joint tenancy. See 2 *Tiffany, Real Property*, (3*d Ed.*) § 425. Thus I conclude that Elizabeth's interests were vested in Mrs. Shockley and passed under her will when she died August 10, 1945. Appropriate

relief will be granted plaintiffs as to this interest. This interest will however be burdened with those disbursements made by Elizabeth which are properly chargeable thereto.

I do not believe the evidence shows any intent on Avery's part to reconvey his interest. Nor was his connection with the settlement of the mother's estate sufficiently close to bind him by any admissions made by Elizabeth. Avery's record title will not be disturbed.

Order on notice.