IN RE ESTATE OF ALLIE BAKER.

CLARA E. BAKER, appellant, v. MARGARET COBB, petitioner-appellee.

No. 48984.

(Reported in 78 N.W.2d 863)

OCTOBER 16, 1956.

REHEARING DENIED DECEMBER 14, 1956.

Tesdell & Miller, of Des Moines, for appellant.

Boyle & Schuler, of Clear Lake, for petitioner-appellee.

WENNERSTRUM, J.—Petitioner brought an action in equity for a declaratory judgment to determine the effect of a sale by contract of real estate previously held in joint tenancy by a husband and wife. The trial court held the joint tenancy had been terminated by reason of the contract of sale and as a result thereof each held an undivided one-half interest in the contract at the time of the husband's death. It further held his estate was entitled to receive and collect one half of the balance due on the real-estate contract on the date of his death, and that the widow, Clara E. Baker, as administratrix, should account to his estate for the undivided one-half interest in the contract owned by the decedent, Allie Baker, at the time of his death. The widow has appealed.

It was stipulated by the parties that prior to January 17, 1952, the decedent, Allie Baker, and Clara E. Baker, his wife, were the owners of two separate pieces of property in Des Moines, Iowa; on this date Baker and his wife entered into two separate real-estate contracts for the sale of the two properties to two different parties; Allie Baker died on October 26, 1952, and was survived by his widow, Clara E. Baker, and three children by a previous marriage, namely, Gerald A. Baker, Mona Hanson, and Margaret Cobb, the petitioner herein, all being adults. Following the death of Allie Baker the widow, Clara E. Baker, advised Margaret Cobb the decedent had left no estate which required probating because all of the property owned by him during his lifetime had been owned by him and his wife as joint tenants with right of survivorship; and the petitioner was further informed the widow claimed to be the owner of all property which she and the decedent owned as joint tenants and denied the estate of Allie Baker, deceased, is the owner of an undivided one-half interest in the two real-estate contracts.

It was further stipulated the petitioner, Margaret Cobb, is the owner of an undivided four-ninths interest in the estate of her deceased father, having acquired by written assignment an undivided two-ninths interest of her sister, Mona Hanson.

The issues before this court are the same as those before the trial court. They are: (1) Was the joint tenancy in the real estate destroyed by Allie Baker and his wife when they entered into the two contracts for the sale of real estate, and (2) did the decedent, Allie Baker, and his wife create a joint tenancy with the right of survivorship and not as tenants in common by reason of the form of the contract entered into in the sale of the real estate?

This court has passed on the first question raised on this appeal. In re Estate of Sprague, 244 Iowa 540, 57 N.W.2d 212. Inasmuch as counsel for the widow has questioned the sufficiency of our previous consideration of the question herein raised we shall give further consideration to this problem. In our prior opinion we referred to and cited the following cases: In re Estate of Bernhard, 134 Iowa 603, 112 N.W. 86, 12 L. R. A., N. S., 1029, and In re Estate of Miller, 142 Iowa 563, 119 N.W. 977. In the first case this court held the sale of real estate by contract resulted

in the change from real to personal property and passed as such under the terms of a will. In the second case we again held as we did in the first cited case. We deem it advisable to make a further analysis of the question here presented.

I. Blackstone (Book II, Seventh Edition, pages 180, 185, 186) in his commentaries comments on joint tenancy as follows:

"An estate in joint-tenancy is where lands or tenements are granted to two or more persons, to hold in fee-simple, fee-tail, for life, for years, or at will. In consequence of such grants the estate is called an estate in joint tenancy, and sometimes as estate in jointure, which word as well as the other signifies a union or conjunction of interest; though in common speech the term, jointure is now usually confined to that joint estate * * *.

"The properties of a joint estate are derived from its unity, which is fourfold; the unity of interest, the unity of title, the unity of time, and the unity of possession; or, in other words, joint-tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession.

"We are, lastly, to enquire, how an estate in joint-tenancy may be severed and destroyed. And this may be done by destroying any of its constituent unities. 1. That of time, which respects only the original commencement of the joint estate, cannot indeed (being now past) be affected by any subsequent transactions. But, 2. The joint-tenants' estate may be destroyed, without any alienation, by merely disuniting their possession. For joint-tenants being seised *per my et per tout*, everything that tends to narrow that interest, so that they shall not be seised throughout the whole, and throughout every part, is a severance or destruction of the jointure. And therefore, if two joint-tenants agree to part their lands, and hold them in severalty, they are no longer joint-tenants; for they have now no joint-interest in the whole, but only a several interest respectively in the several parts. And for that reason also, the right of survivorship is by such separation destroyed. * * * 3. The jointure may be destroyed, by destroying the unity of title. As if one joint-tenant alienes and conveys his estate to a third person: here the joint-tenancy is severed, and turned into tenancy in

common; * * *. 4. It may also be destroyed, by destroying the unity of interest. * * * And, whenever or by whatever means the jointure ceases or is severed, the right of survivorship or *jus accrescendi* the same instant ceases with it. * * *."

In the case of Fleming v. Fleming, 194 Iowa 71, 81, 174 N.W. 946, 180 N.W. 206, 184 N.W. 296, the four requisites of a joint tenancy are mentioned. However, in connection with the question of the unities referred to by Blackstone and in the Fleming case we should call attention to the fact this court in Conlee v. Conlee, 222 Iowa 561, 269 N.W. 259, apparently discarded the four unities feature in regard to the creation of a joint tenancy and concluded the intention of the parties might be determined by their statements and actions and was sufficient to create a joint tenancy. The case of Switzer v. Pratt, 237 Iowa 788, 791, 792, 23 N.W.2d 837, further and more definitely held the "four unities" common-law rule was not applicable in Iowa and the intention of the parties should prevail.

■ II. Although the statement was not necessarily determinative of the case it was stated in In re Estate of Heckmann, 228 Iowa 967, 974, 291 N.W. 465, 468: "There is also the recognized rule that a conveyance terminates a joint tenancy." It will thus appear this court there gave consideration to the question whether a conveyance terminated a joint tenancy. And in Wood, admr. v. Logue, 167 Iowa 436, 441, 149 N.W. 613, 615, Ann. Cas. 1917B 116, this court again referred to the effect of a conveyance of an interest in joint tenancy and stated: "Even at common law it is within the power of either tenant to sever the joint character of the title by conveying or otherwise disposing of his right or share to a third person [citing authorities]."

In Fleming v. Fleming, supra, at page 82 of 194 Iowa, page 950 of 174 N.W., this court referred to the manner in which a joint tenancy might be severed: "While the tenants are considered as one person, and the estate joint, yet each of the tenants has a moiety interest. Or, in other words, while each joint tenant is regarded as having the whole of the estate, his interest in the estate may be put to an end or severed during his life. Each joint tenant, during his life, may dispose of his share

by the usual modes of conveyance; but if he die without making such disposition, the title to the thing which is the subject of the joint tenancy remains in the survivor or survivors, free from the share or moiety of the one who dies."

It will thus appear this court has, indirectly, if not by direct holding, adhered to the general rule a conveyance terminates a joint tenancy.

The text authorities hold the conveyance of an interest by a joint tenant in favor of a stranger necessarily destroys the unity of title. Tiffany, Real Property, Third Edition 1939, Volume 2, section 425, page 209; Thompson on Real Property, Permanent Edition, section 1780, page 317.

Other authorities bearing on the question of the severance of joint tenancy by conveyance of the interest of a joint tenant are: Stanger v. Epler, 1955, 382 Pa. 411, 115 A.2d 197, 200; Estate of Brockway v. Commissioner of Internal Revenue, 1954, 9 Cir., Cal., 219 F.2d 400; Klouda v. Pechousek, 1953, 414 Ill. 75, 110 N.E.2d 258, 261; Shelton v. Vance, 1951, 106 Cal. App. 2d 194, 234 P.2d 1012, 1014; Shockley v. Halbig, 1950, 31 Del. Ch. 400, 75 A.2d 512, 513; Klajbor v. Klajbor, 1950, 406 Ill. 513, 94 N.E.2d 502, 504; Berry v. Berry's Estate, 1949, 168 Kan. 253, 212 P.2d 283, 286; Mulvanity v. Nute, 1949, 95 N. H. 526, 68 A.2d 536, 538; Ball v. Mann, 1948, 88 Cal. App. 2d 695, 199 P.2d 706, 708; Hammond v. McArthur, 1947, 30 Cal. 2d 512, 183 P.2d 1, 2, 3; Kozacik v. Kozacik, 1946, 157 Fla. 597, 26 So.2d 659, 661; American Oil Co. v. Falconer, 1939, 136 Pa. Super. 598, 8 A.2d 418, 421. See also annotations 129 A. L. R. 814 and cases cited; 14 Am. Jur., Cotenancy, section 14, pages 86, 87.; 48 C. J. S., Joint Tenancy, section 4, page 928.

III. It has been held a contract or covenant to convey an interest which can be enforced in equity will operate to sever a joint tenancy. Kozacik v. Kozacik and Klouda v. Pechousek, both supra. The case of Naiburg v. Hendriksen, 1939, 370 Ill. 502, 505, 19 N. E.2d 348, 350, is commented upon in the Klouda case and although dealing with the Torrens system of land titles this last cited case deals with the question before us. Certain statements therein made are undoubtedly not determinative of that case but set forth the effect of a contract for the sale of real estate held in joint tenancy, as follows:

"We have been unable to find any cases from this jurisdiction on the question of whether a contract to convey operates as a severance of a joint tenancy. However, the courts of other jurisdictions, and leading text writers, are unanimously of the opinion that a contract to convey operates, in equity, as a severance of the joint tenancy. In re Hewett, 1894, 1 Ch. Div. 362; Gould v. Kemp, 1833, 2 Myl. & K. 304, 309, 39 Eng. Rep. 959, 961; In re Wilford's Estate, 1879, 11 Ch. Div. 267; Burnaby v. Equitable Reversionary Interest Society, 1885, 28 Ch. Div. 416; Brown v. Raindle, 1796, 3 Ves. Jun. 256, 257, 30 Eng. Rep. 998, 999; Kurowski v. Retail Hardware Mutual Fire Ins. Co. of Minnesota, 203 Wis. 644, 234 N.W. 900. Tiffany, in his Law of Real Property, volume 1, paragraph 191, at page 638, says: 'It has been decided that in equity a mere contract by one joint tenant to sell his share or to settle it will effect a severance.' "

The Kurowski case cited in the quotation includes a statement supporting the theory of severance. However, under the facts noted the Wisconsin court held there was no severance. We have reviewed the English cases cited and we are convinced they support the quoted statement.

It should be stated that there are cases which hold contrary to our holding herein. In Watson v. Watson, 1955, 5 Ill.2d 526, 533, 126 N. E.2d 220, 224, there was a contract of joint tenants to sell and it was held: "The doctrine of equitable conversion would have no application on these facts to divest the surviving joint tenant of her rights, as survivor, to the proceeds to be paid under the contract." In Childs v. Childs, 293 Mass. 67, 199 N. E. 383, 386, it was held an estate in entireties was not severed by the giving of a bond for the conveyance of real estate. And in Simon v. Chartier, 250 Wis. 642, 27 N.W.2d 752, 754, the Wisconsin court held the signing of a land contract did not constitute a severance of a joint estate, citing Kurowski v. Retail Hardware Mut. Fire Ins. Co., supra.

IV. Joint tenants by their mutual agreements may sever their joint tenancy. Greiger v. Pye, 210 Minn. 71, 297 N.W. 173, 175. A like conclusion was reached in the case of McDonald v. Morley, 15 Cal.2d 409, 101 P.2d 690, 129 A. L. R. 810, where there was an agreement in the event of the death of

either of joint tenants the decedent's share should become the property of their daughter. The court held this agreement was inconsistent with a joint tenancy. And in Ball v. Mann, 88 Cal. App.2d 695, 199 P.2d 706, 708, it was held a conveyance by joint tenants destroys the joint tenancy.

In 32 Iowa Law Review 541 it is stated: "A conversion of the joint tenancy into a tenancy in common may be effected by the concerted action of all joint tenants as well as by the act of one or less than all of them. Conduct or mutual agreement between joint tenants making disposition of the property may convert the joint tenancy into a tenancy in common, even though such a conversion was uncontemplated." The cases cited in support of the foregoing statements are: McDonald v. Morley, 1940, supra, Re Wilford's Estate, 1879, 11 Ch. Div. 267 (an agreement and execution of mutual wills); In the Estate of Heys, 1914, Probate 192 (English)—(an agreement and execution of mutual wills); Jackson v. Jackson, Ch. 1804, 9 Ves. Jr. 591, 32 Eng. Rep. 732 (from a course of dealing); Wilson v. Bell, 1843, 5 Ir. Eq. R. 501 (from a course of dealing). A review of these cases gives support to the statements previously made. This particularly is true as pertains to the case of Re Wilford's Estate, supra, and In the Estate of Heys, supra, where it is the holding an agreement to make mutual wills was held sufficient to effect a conversion of the joint tenancy into a tenancy in common. See also Berry v. Berry's Estate, 168 Kan. 253, 212 P.2d 283, 286, 287. If an agreement to make mutual wills effects a conversion with equal logic it can be said the same effect will result from a sale of all the interest of the parties to a joint tenancy by reason of a contract of sale.

It must be a natural conclusion if there is a severance where one of two joint tenants conveys an interest in property held in joint tenancy the same result must be reached where both joint tenants enter into a contract for the conveyance of all their interest even though the vendors retain legal title to the realty as security. This is the holding in Buford v. Dahlke, 158 Neb. 39, 62 N.W.2d 252, 256. This case, as well as the case of In re Estate of Sprague, supra, has been the subject of comments in certain law school publications. We deem the holdings in these cases sound.

V. It is the holding of text authorities and our cases an executory contract for the sale of land works a conversion. The vendee is, in the contemplation of equity, actually seized of the estate. 19 Am. Jur., Equitable Conversion, section 11, page 11. We so held in Inghram v. Chandler, 179 Iowa 304, 306, 308, 161 N.W. 434, 435, L. R. A. 1917D 713: "The doctrine of equitable conversion is altogether a doctrine of equity, and depends wholly upon the rules of equity. Its real purpose is to give effect to the manifest intent of a testator or vendor, and to treat that as done which by will the testator has directed to be done, or that which, by previous contract with another, both have mutually bound themselves to do. * * * Taking the typical case of equitable conversion by contract, as above stated, we are fully committed to the doctrine that such a contract works an equitable conversion; that, in case of the death of the vendor, his interest in the contract would pass as personalty; that, in case of the death of the vendee, his interest would pass as realty; that a judgment against the vendee would become a lien upon the property as real estate; that a judgment against the vendor would not become a lien upon the property as real estate. See In re Estate of Miller, 142 Iowa 563 [119 N.W. 977], and authorities therein cited. We have held also that such a contract becomes a credit in the hands of the vendor and is subject to taxation as such." See also Holzhauser v. Iowa State Tax Comm., 245 Iowa 525, 530, 62 N.W.2d 229.

VI. It is the contention of some of the writers on the subject of severance of joint tenancy, as well as that of equitable conversion, the intent of the parties should prevail. Conceding this to be true under certain circumstances we do not find in the contract entered into by the joint tenants any indication they intended the proceeds of the sale to be held in joint tenancy. And the language used to express "a contrary intention" must clearly manifest such intention. Hruby v. Wayman, 230 Iowa 653, 655, 298 N.W. 639; Hoffman v. Stiger, 28 Iowa 302; Albright v. Winey, 226 Iowa 222, 284 N.W. 86.

The contract in no way indicated the proceeds of the sale were to be held in joint tenancy. In the contract the purchasers were noted "* * * as joint tenants with the right of survivorship

and not as tenants in common." Inasmuch as they were definitely noted as holding the property purchased in joint tenancy it cannot be said the vendors intended to hold the proceeds of the sale of the property in joint tenancy when there was no manifest intention or statement it should be so held.

Then too, it should be kept in mind paragraph 13 of the contract provides: "It is further agreed that the stipulations herein shall apply to and bind the heirs, executors, administrators and assigns of the respective parties, * * *." Under this circumstance it cannot be said the proceeds of the sale were to be held in joint tenancy. If this were true there would be no necessity of binding "* * * the heirs, executors, administrators and assigns of the respective parties."

VII. We are conscious of the fact it is the responsibility of this court to make the ultimate decision on matters presented to it. However, it is of interest to note the Committee on Iowa Land Title Examination Standards of the Iowa State Bar Association, in its 1950 report, held where joint tenants entered into a contract for the sale of real estate a severance was effected. Section 4.11, page 24. This expression was made prior to our holding in In re Estate of Sprague, 1953, supra. The standard is further adhered to in the 1955 report of the committee.

VIII. Reference is made in the dissenting opinion to the case of Hayes' Estate, 1 I. R. 103, 207. Our study of the reversing opinion in this case discloses no citation of authorities in support of the holding therein. It is true, as noted in the dissenting opinion and as noted in this majority opinion, there are cases holding contrary to our conclusions herein reached. However, there are equally sound authorities, as previously noted, which hold agreements effecting jointly held properties not consistent with property so held result in a conversion into a tenancy in common. Such is the situation in the present case.

We are convinced the better reasoning sustains the conclusion and holding a severance of a joint tenancy results where a contract for the sale of real estate is entered into by the joint tenants, as in the present case. It is our further holding the contract for sale resulted in an equitable conversion of the real

estate into personalty. And there is insufficient or no competent evidence to show it was the intention of the vendors in the real-estate contract the proceeds received therefrom were to be held in joint tenancy with right of survivorship. Consequently the trial court is affirmed.—Affirmed.

THOMPSON, C. J., and SMITH, LARSON and PETERSON, JJ., concur.

OLIVER, BLISS, GARFIELD, and HAYS, JJ., dissent.

OLIVER, J. (dissenting)—I respectfully dissent.

The majority opinion cites many authorities which hold the sale or contract of sale of his interest by one joint tenant (or less than all of them) works a severance of the joint tenancy. No one disputes this rule. Having established it, the majority opinion reasons, incorrectly, that because a contract of sale of his interest by *one* joint tenant works a severance of the joint tenancy, a contract of sale by *all* the joint tenants likewise works a severance and changes the character of the unpaid balance into a tenancy in common.

The majority opinion thus puts the question: "Was the joint tenancy in the real estate destroyed by Allie Baker and his wife when they entered into the two contracts for the sale of the real estate * * *?" It then states In re Estate of Sprague, 244 Iowa 540, 57 N.W.2d 212, decided this question. As will be hereinafter shown, there was no such question in the Sprague case. The parties there stipulated that the surviving widow owned only ½ the proceeds of the contract of sale, and the only issue was whether the contract of sale worked an ademption of the devise of the real estate as such, made by her to step-daughters.

The majority opinion sees fit to list and discuss decisions not in point from Illinois and Wisconsin, in the face of subsequent decisions from those jurisdictions, directly in point and contrary to the majority holding. Of the impressive appearing list of authorities presented to its readers, only one, Buford v. Dahlke, 158 Neb. 39, 62 N.W.2d 252, supports the majority holding. Consideration will be given the Buford case later. The decisions

hereinafter discussed show the majority opinion is contrary to the substantial weight of authority and is based upon incorrect reasoning. However, the authorities cited do not equal in number those in the majority opinion.

A decision, here in point, by the High Court of Justice in Ireland is Hayes' Estate (1920) 1 I. R. 103, 105, and 207. The lower court had held an agreement for sale entered into by all the joint tenants operated as a severance of the joint tenancy, and reasoned, as does the majority opinion in the case at bar, as follows:

"Now, it being admitted and well-settled law that an agreement for sale by one of the joint tenants of her share severs her joint tenancy, it would seem clear that an agreement for sale by all the joint tenants would sever their joint tenancy. What can a joint tenant sell, whether he sells separately or joins with the others in a sale of the whole? Clearly only his own share. Supposing one, two, or three of four joint tenants sell the whole, what is the effect in law of the agreement? It is merely effective as a sale of the share or shares of the actual vendor or vendors, but it has the further effect of severing the joint tenancy in the share and shares sold from the shares or share unsold. * * * Therefore, it would seem that an agreement for sale by all the joint tenants was in substance and in law a sale by each of her share, and that the same rule as to severance applied to each share as applies where one sells his share separately."

Upon appeal the decision was reversed, the High Court holding an agreement for sale entered into by all joint tenants of real property does not in itself, and in the absence of evidence of intention, operate as a severance of a joint tenancy in the purchase money.

The concurring opinion (1 I. R. 207 at 211) of O'Connor, L. J., states in part: "There was no evidence whatever of any intention to sever the joint tenancy, unless the transaction itself constitutes such evidence. Why should it? Take the converse case. If these six persons had been entitled as joint tenants to a sum of money, and with that money agreed to buy a parcel of land, they would, immediately after they signed the contract, have been equitably entitled to the land as joint tenants, and

not as tenants in common. A mere agreement by persons entitled as joint tenants to convert their property from one species to another does not operate to work a severance. It is true that when the transaction comes to be completed they may effect a severance: in the case of money converted into land, by the limitations in the conveyance; in the case of land converted into money, by taking and dividing the money. But there is nothing of that kind here."

The Hayes case is discussed in 32 Iowa Law Review 539, 542, 543, which states: "It is submitted that for purposes of survivorship, joint tenants are seised *per tout*, but for purposes of alienation, whether total or partial, they are seized *per my*. Because this proposition may be sound, it does not follow, as the lower court in the *Hayes* case assumed, that a contract to sell, executed by all joint tenants, will effect a severance of the joint tenancy in the proceeds. Such a position overlooks the reason behind a severance: a contract by one or less than all of the cotenants, by working a destruction of the unity of title, must perforce effect a severance of the joint tenancy as to the share or shares involved since the purchaser and remaining joint tenant would hold under different grantors. However, a contract to sell, entered into by all the cotenants, involves no such destruction of the unity of title and hence this necessity for severance does not exist. Joint tenants may alienate *per tout*, and this would appear to be the more reasonable view to take of a joint contract for total alienation."

In re Estate of Sprague, 244 Iowa 540, 542, 57 N.W.2d 212, 214, is the decision largely relied upon by the majority opinion. That case involved the construction of the will and codicil of Mrs. Sprague. Item I of the codicil reads in part as follows: " 'I hold in joint tenancy with the said James A. Sprague [her husband] the property known as 1322 A Avenue Northeast, Cedar Rapids, Linn County, Iowa, and I give, devise and bequeath this real estate, in case I survive the said James A. Sprague and become vested with the full title as surviving joint tenant, and am possessed of it at the time of my death, to the said Ethel Sprague Colton, Alice Sprague Overholser and Evelyn Sprague Hall [her stepdaughters], in equal shares, or to their heirs if they do not survive me'."

Mrs. Sprague survived her husband. However, after she made the codicil to the will, but before his death, this real estate was sold by Mr. and Mrs. Sprague on an installment contract. The balance due at the time of the death of Mr. Sprague was $6168.67. Upon the death of Mrs. Sprague her executor filed an inventory showing she owned an undivided one-half interest in said contract at the time of her death of the estimated value of $3568.45. In the will-construction case it was stipulated that at the time of the death of Mrs. Sprague, "she was the owner of an undivided one-half interest in and to one certain contract for the sale of a tract of real estate * * * which is the same real estate referred to in Item I of the codicil to" her will. It was also stipulated that the executor of the estate of Mr. Sprague "is the owner of an undivided one-half interest in and to * * * [this] contract of sale * * * upon which there was a balance due at the time of the death of James A. Sprague of $6168.67, and that the owner of the other undivided one-half interest was the surviving spouse of James A. Sprague, to wit, Nancy M. Sprague."

Hence, it is clear there was no contention in the trial of the Sprague case that the testatrix, Mrs. Sprague, owned anything connected with said real estate other than an undivided one-half interest in the unpaid portion of the contract of sale. It was not claimed she took any interest in the contract of sale as a surviving joint tenant.

The Findings of Fact and Conclusions of Law of the trial court recite: "At the time of the death of Nancy M. Sprague, she was the owner of an undivided one-half interest in a certain contract for the sale of a tract of real estate * * * prior to June 4, 1945, Nancy M. Sprague and James A. Sprague were the owners as joint tenants with full rights of survivorship of the tract of real estate * * *. On June 4, 1945, Nancy M. Sprague and James A. Sprague entered into a contract to sell said real estate * * *. This sale was on an installment basis and the value of the undivided one-half interest of Nancy M. Sprague in this contract at the time of her death was estimated by her executor, in his inventory, to be $3568.45.

"On June 4, 1945, Mr. and Mrs. Sprague sold this real estate on an installment contract to Kyle and Ina V. Kilpatrick

and there was still a substantial balance due on this contract at the time of the death of Nancy M. Sprague. From this changed condition has arisen the doubt and controversy as to whether the interest of Nancy M. Sprague in this Kilpatrick contract passed to her sister, Margaret Huston, under Item III of" her will or passed to her stepdaughters under Item I of the codicil.

The trial court stated also that the contract of sale destroyed the joint tenancy and thereafter Nancy and James A. Sprague were each the owner of an undivided one-half interest in the contract. A more complete statement would have been that the interested parties stipulated that Nancy and James each owned an undivided one-half interest in the contract. The court continued: "If a contract for sale of land might have been enforced against the vendor had he lived, the conversion from realty into personalty may be completed, even though the vendee has not paid the purchase price, and even though the contract be executory in character. This seems to be the settled rule of the cases relating to equitable conversion. In re Estate of Bernhard, 134 Iowa 603."

After quoting from the Bernhard case the court continued: "The making of the Kilpatrick contract to sell this real estate worked an ademption of the devise of this real estate to the stepdaughters of Mrs. Sprague. * * * An ademption occurs when there has been a failure of a devise simply because the testator is not possessed of the property devised when the will becomes operative. There is nothing in Mrs. Sprague's will and first codicil thereto which shows that at the time it was made that she had any idea that she would sell this real estate. * * * At the time that she executed the will and the first codicil thereto, the subject matter of the devise was a tract of real estate and not a contract to sell real estate.

"It is, therefore, my conclusion that the undivided interest of Nancy M. Sprague in the contract * * * passes to Margaret Huston * * *and does not pass to" the stepdaughters.

Accordingly, the court subsequently ordered the executor of Mrs. Sprague's estate to deliver and turn over to Margaret Huston the "undivided interest of Nancy M. Sprague in the contract."

The conclusion of the trial court that the contract of sale worked an ademption of the devise was correct. See 57 Am. Jur., Wills, sections 1585 and 1586. Whether Mrs. Sprague owned half or all of the contract of sale was not in issue. The parties had stipulated she owned an undivided one half. This erroneous assumption by the parties would not make the stipulated rule applicable to any other case.

The proposition stated in appellants' brief upon this phase of the appeal of the Sprague case to the supreme court, is: "The trial court erred in holding that Margaret Huston is entitled to * * * the undivided interest of Nancy M. Sprague in the contract * * * ." The argument states that from the language of the codicil "there would be apparently no question before this court as to who was entitled to one of the undivided halves of the balance due upon the contract for the purchase of this real estate * * *. The fact that her interest in said real estate has been diminished by transactions subsequent to the execution of Item I of the codicil and prior to her death, cannot be said to have changed or diminished her intention in any way. * * * The will erroneously and mistakenly described the interest she owned at the time of her death but the fact that she owned only an undivided ½ interest in the legal title does not change her intention to give all of that interest to these appellants. * * * The reduction of her interest by ½ does not reduce or change her intent. * * * If it was her intention to give all, surely it cannot be said that she did not intend to give a portion, or an interest less than the whole, which it developed that she had at the time of her death."

The foregoing expresses the only theory upon which was claimed a reversal of the judgment of the trial court upon this phase of the case. No authorities were cited by appellants.

Appellee's statement of propositions relied upon for affirmance merely recites the trial court did not err in holding Margaret Huston entitled to, "the undivided interest of Nancy M. Sprague in the contract * * *." The argument assumes (as the parties had stipulated) "that the legal effect of the execution of this contract was to sever the joint tenancy * * *." It states, "The undivided interest in the contract to sell real estate does not

come within the description of the property which Mrs. Sprague intended should pass under Item I of the first codicil and it therefore passes under Item III of the will."

Obviously, it should not be assumed this court decided a question which was not before it. Its decision was necessarily based upon the ademption issue only. This is indicated by the statement of this court at page 547 of 244 Iowa: "The comments of the trial court * * * relative to the real estate * * * aptly set forth our views relative to this feature of the case. * * * However, in support of the trial court's conclusions on this phase of the case see In re Estate of Bernhard, 134 Iowa 603, 606, 112 N.W. 86, 12 L. R. A., N. S., 1029, and In re Estate of Miller, 142 Iowa 563, 565, 119 N.W. 977."

The Bernhard case holds testator's devise of all his real estate does not include real estate which he thereafter sells under contract. It was cited by the trial court in support of the ademption holding. It is listed in West Digest only under Wills, Key 767, which is limited to ademption cases. In the Miller case a devise of all of lot 2 of which testatrix died seized was held not to include the benefit of an installment contract to sell part of the lot, previously made by testatrix. Although the above-quoted language of this court in the Sprague case might well have been more definite, it is evident the Sprague decision was based upon ademption only, concerning which the authorities were cited, rather than upon the quantity and quality of testatrix' interest in the sale contract, concerning which the parties had stipulated and there was no controversy, no authorities cited and no consideration by this court.

However, the Sprague case has been frequently misinterpreted as holding that an installment land contract executed by both joint tenants results in a severance of the joint tenancy. This is not said in criticism of such misinterpretations. The decision of this court should have more clearly pointed out that the decision upon this phase of the case was limited to the issue of ademption.

An article in 2 Drake Law Review 76, 90 and 91 states: "A recent Iowa case [Sprague] held that an installment land contract executed by both joint tenants resulted in a severance.

Without discussing the problem, the court quoted at length the trial judge's conclusions which, it was stated, were supported by two earlier cases. Neither case deals with this problem."

It is true neither supporting case deals with the problem of severance by a contract to sell referred to in the Law Review article. However, as already stated herein, the two cases cited do support the trial judge's conclusion, "the contract of sale worked an ademption of the devise", and this is the theory upon which the decision of the supreme court was based.

The Utah Bar Bulletin, Volume 25, page 89, states: "The Iowa [Sprague] case declares that the sale created a severance, and consequent tenancy in common in the proceeds—citing no authority except two of its own cases not involving joint tenancies, which held that executory sales created equitable conversions. Obviously not very sound support since all of the states involved recognize the doctrine of equitable conversion to some extent." (As hereinbefore pointed out, the two cases cited in Sprague were in support of the holding therein that the contract of sale worked an ademption of the devise of the real estate.)

The majority opinion relies also upon Buford v. Dahlke, 158 Neb. 39, 62 N.W.2d 252, 256, which refers to the Sprague case at some length but makes no reference to the two cases cited in support of the Sprague decision or to ademption as the basis thereof.

In Minnesota Law Review, Volume 38, page 466 et seq. is an article by Professor Robert W. Swenson and Ronan E. Degnan, entitled, "Severance of Joint Tenancies", which states in part:

(Page 475) *"Contracts to sell.* A valid contract by one joint tenant to convey his interest severs the joint tenancy in equity.

"A new and [page 476] especially frightening application of severance and the 'unities' rule has but recently arisen. It is here treated in detail because the problem is new and because of the grave and wholly unnecessary danger to land titles created by two recent opinions. [Buford and Sprague] The latest and worst is *Buford v. Dahlke,* from Nebraska. H and W, joint tenants, executed an installment contract for deed. The price was less than half paid when H died; between his death and the time of suit the vendees had paid to W two hundred dollars. The ad-

ministrator of H sued the vendees for one half of the payments due between the time of H's death and the commencement of the action, and for a declaratory judgment that one half of the future payments were assets of H's estate, payable to the administrator. The court held that at the time of H's death the contract and all interests under it were held in tenancy in common, and that one half of the then unpaid purchase price was an asset of the estate. Ownership of the retained legal title was not directly involved, but the irresistible implication is that a conveyance by W after full payment of the purchase price will not suffice; conveyances will also have to be obtained from the administrator, beneficiaries, heirs or creditors of H. The plain holding—relating to the purchase price—will create great practical inconvenience; the clear implication—relating to title—is disastrous. A good many Minnesota titles are based on conveyances executed by a surviving grantor-joint tenant. If the rule of the *Buford* case is sound, those titles are now highly suspect, at best.

"The [page 477] reasoning upon which this unfortunate result is based is indefensible. * * *

"These reasons [page 478] given by the court do not bear even a casual examination. In addition to what is said above, they cite a number of cases holding that a contract to convey executed by *one* joint tenant alone will destroy the right of survivorship. This is the rule without exception, and it is perfectly sound. The one who executed the conveyance has deprived his cotenant of any possibility of taking by survivorship. But where both contract to convey, their mutual rights are unchanged. By any test, the result is unsound if based on the reasons given so far. The best test suggested is prejudice to the rights of a cotenant—none has occurred. If intent to sever controls, there is complete absence of any intent to destroy survivorship. If the traditional test of destruction of a unity is applied, we find that no unity has been affected.

"In 1953 the Iowa court [in Sprague] held that a contract for deed executed by both joint tenants destroyed the right of survivorship, and that therefore the interest of the survivor passed under a clause of her will dealing with property of her estate generally and not under a clause disposing of interests she

acquired as surviving spouse. The Iowa court made the unsupported and unconsidered [page 479] statement that the contract severed, each thereafter owning an undivided one half. * * * But to the extent that the cases imply that the legal title as security is severed into a tenancy in common, they are contrary to authority and will create the greatest confusion in land titles."

(This dissent again points out that Sprague was based upon ademption.)

"It [page 481] seems inconceivable that they [Sprague and Buford] would have reached the results they did if the case had been properly presented. Iowa, in fact, could still reach that result; they did not hold that payment to the survivor would not suffice.

"[Page 482] A final observation on the contract for deed cases: if the execution of the contract 'severs,' will forfeiture of the vendee's interest upon default revive survivorship? A substantial number of Iowa conveyancers will be horrified to find that it does not, if that is in fact the case. But the title quieting business will boom."

The Buford case is discussed in a note in Cornell Law Quarterly, Volume 41, page 154, which states in part:

"The little authority on the question as to whether joint tenants who contract to sell their land hold the right to the purchase price as joint tenants or as tenants in common, when their intent as to the form of co-ownership in which the purchase price is to be held is not stated in the contract or established by parol, is contrary to the position taken by this court. [In Buford]

"[Page 155] The decision of the court seems to disregard the real intent of the parties. It is commonly known among the laity that survivorship is an incident of joint tenancy; this is also settled law. When a married couple buys land as joint tenants or as tenants by the entirety they intend it to pass by survivorship. But the possibility that if they contract to sell their land their right to the purchase price will not go to the survivor, unless they expressly provide that it shall, can scarcely be as well understood since it is definitely not a settled rule of law. There is little basis for the contention that when a husband and

wife contract to sell land jointly owned by them, they actually intend that the survivorship which was incident to their interests in the land should not be incident to their interests in the money due them under the contract. Their act in contracting to sell land held under a survivorship form of cotenancy can more reasonably be interpreted as an attempt to substitute rights in money for their rights in land, the form of co-ownership continuing as before. The parties intended survivorship when the joint tenancy was created. Until an intent to terminate that right is manifested, the court should endeavor to protect it. It is contended that no rule of law precluded the court from reaching a decision that would give effect to this intention.

"The court utilized the doctrine of equitable conversion in coming to its decision. Equitable conversion is not a rule of law to be reasoned from, but a shorthand way of describing the consequences of the rule that a land [page 156] contract will be specifically enforced by a court of equity, and should only be applied where it will carry out the intention of the parties. Conversion has not always been found on facts like those before this court."

This note discusses also decisions involving tenancies by the entirety. However, some of those cases are affected by statutes and some by the rule in certain jurisdictions that: "Estates by entirety are peculiar to real estate. No such thing exists, except by analogy, as to personal property." That statement appears in In re Estate of Blumenthal (1923) 236 N. Y. 448, 453, 141 N.E. 911, 912, 30 A. L. R. 901, which holds a purchase-money mortgage to husband and wife upon the sale of property held by entirety is held in common, where the New York statute provides every estate granted to two or more persons shall be a tenancy in common unless declared to be a joint tenancy. However, the same court in 1938, in In re Maguire's Will, 277 N. Y. 527, 13 N.E.2d 458, affirmed the decision in 251 App. Div. 337, 296 N. Y. S. 528, which held the incident of survivorship was preserved in the case of a contract by both parties to sell real estate held by the entirety.

Butterer v. Santoro (1953) 24 N. J. Super. 361, 94 A.2d 525, 527, points out that New Jersey does not recognize a tenancy by the entirety in personal property and decides the husband and

wife held their right to the purchase price of the real estate as tenants in common. Allen v. Tate, 58 Miss. 585, 588, is quoted in the Cornell Quarterly note: "The presumption is irresistible that in selling the land and taking notes for the purchase-money, payable to themselves, they intended the notes to represent the land, and in case of the death of one of them, to survive to the other, as the land would have done in like case."

The note also refers to Scutella v. County Fire Ins. Co., 231 App. Div. 343, 247 N. Y. S. 689, which dealt with the proceeds of a fire insurance policy paid for the destruction of property owned by the entirety.

The limitations of space do not permit a fuller exposition of this thoughtful note. It concludes:

"It is not surprising that there should be such differences of opinion in this shadow area of the law. As has already been pointed out, much of the confusion seems to stem from a misplaced emphasis upon conversion from realty to personalty, both legal and equitable. The intention of the parties should be controlling, and the function of the court is to seek out that intention.

"[Page 160] In determining how the cotenants wish to hold the purchase price the courts should give due consideration to the way in which the land was owned. The tenancy, formed by husband and wife and subject to survivorship, should be viewed as an arrangement for holding wealth. When looked at in this manner the alteration in the form of that wealth should not affect the manner in which it is held. The sale of real property held subject to survivorship might work '. . . a transmutation of the property from real to personal, but . . . [should] not change the character of the estate . . .'. The close ties of the parties would bolster the inference that survivorship is intended.

"The court in the principal case [Buford] also based its decision on the unities rule. The court held that the contract to sell the property destroyed the unities necessary to a joint tenancy, and so terminated the estate. The unities rule, however, merely requires equality of status among the joint tenants. Where all the joint tenants join in the same act with respect to the property held by them, their relationship to the altered prop-

erty is still one of equality. The unities have not been violated, and so far as the unities rule is concerned, the joint tenancy will still exist. The argument under consideration, like the one with respect to the occurrence or nonoccurrence of an equitable conversion, is, of course, irrelevant. The answer to whether the vendors hold the right to the purchase price as joint tenants or as tenants in common is in no way dependent upon what happened to their joint tenancy in the land. Irrespective of whether that joint tenancy continued or was terminated, the intent of the parties should control the nature of the co-ownership of their right to the purchase price."

In jurisdictions which permit tenancy by the entirety in personal property also, it has been decided a mortgage taken in the joint names of husband and wife, on the sale of land held as tenants by the entirety, is presumed to be held by the same estate, so that, in the absence of evidence showing an intended division, the survivor becomes the sole owner, and the administrator of the deceased spouse has no interest therein. 30 A. L. R. 905, 907. For example, Bramberry's Estate, 156 Pa. 628, 634, 27 A. 405, 408, 22 L. R. A. 594, 36 Am. St. Rep. 64, states: "But a conveyance of land to husband and wife in consummation of their joint purchase of it during coverture vests in them an estate by entireties, and when on a sale of the land so held they take in their joint names an obligation for the purchase money, the presumption is that they intend to hold the latter as they did the former." Other decisions are listed in the annotation in 30 A. L. R. at page 907, and in the annotation in 117 A. L. R. at pages 920 to 922, and in 8 A. L. R. 1017.

Reference has been made already to Childs v. Childs, 293 Mass. 67, 199 N. E. 383, cited by the majority opinion. That case held the execution of a bond for deed by tenants for entireties, where no conveyance was made, did not change the quality of their estate. Detroit & Security Trust Co. v. Kramer, 247 Mich. 468, 226 N.W. 234, held the surviving husband was the sole owner of the wife's interest in realty, held by them as tenants by entireties, at the time of her death, notwithstanding their executory contracts to sell it and convey title to another. Another decision so holding is Foy v. King, 248 Mich. 650, 227 N.W. 541.

Mundy v. Mundy, 296 Mich. 578, 296 N.W. 685, which cites the Detroit & Security Trust Company case, involved a conveyance of real estate in joint tenancy after the owner had contracted to sell it. Held, upon the death of the original owner, his interest in the contract became the property of the survivor.

Watson v. Watson, 5 Ill.2d 526, 533, 126 N.E.2d 220, 224, is in point: "The facts here indicate that joint tenants entered into a contract to sell property conditioned upon certain payments to be made by the buyer. The doctrine of equitable conversion would have no application on these facts to divest the surviving joint tenant of her rights, as survivor, to the proceeds to be paid under the contract." Simon v. Chartier, 250 Wis. 642, 27 N.W.2d 752, holds the signing of a land contract by husband and wife who owned the realty as joint tenants did not constitute a severance of the joint tenancy, and title passed by survivorship to widow upon death of husband and widow's deed would pass to her after acquired title.

Fish v. Security-First Nat. Bank, 31 Cal.2d 378, 387, 189 P.2d 10, 15, contains a good statement of the general rule: "The proceeds of joint tenancy property, in the absence of contrary agreement, retain the character of the property from which they are acquired."

In re De Witt's Will, 202 Misc. 167, 170, 114 N.Y.S.2d 81, 84, a nisi prius decision, involves a contract of sale which gives the seller the right to declare a default for nonperformance, to retain any payments as rent, etc., and provides that the buyers shall be tenants holding over. The contracts in the case at bar provide the seller may declare a default for nonperformance, retain payments as compensation for the use of the property and the buyers may be treated as tenants holding over. The contract in the De Witt case and those at bar provide that their stipulation, " 'shall apply to and bind the heirs, executors and administrators and assigns of the respective parties.' " The De Witt case holds the contract became the property of the surviving tenant and that the provision, that, in the event of default payments should be rent, indicates an intention equitable conversion should not take place.

Division I of the majority opinion states, "this court in Conlee v. Conlee, 222 Iowa 561, 269 N.W. 259, apparently discarded the four unities feature in regard to the creation of a joint tenancy and concluded the intention of the parties might be determined by their statements and actions and was sufficient to create a joint tenancy. The case of Switzer v. Pratt, 237 Iowa 788, 791, 792, 23 N.W.2d 837, further and more definitely held the 'four unities' common-law rule was not applicable in Iowa and the intention of the parties should prevail." However, the majority opinion is based in part, at least, upon the theory that the contract to sell the property destroyed the unities necessary to a joint tenancy and so terminated the estate. Upon the question whether this court has "discarded the four unities feature" see Colson v. Baker, 42 Misc. 407, 87 N. Y. S. 238, 239, which was cited in Switzer v. Pratt. See also statement of the author of the annotation at 44 A. L. R.2d 598, and decisions discussed in 44 A. L. R.2d 605.

I would reverse the judgment of the trial court.

BLISS, GARFIELD and HAYS, JJ., join in this dissent.