BLANCHE B. JORDAN, Appellant, v. GEORGE C. DOTY et al., Appellees.

**SPECIFIC PERFORMANCE:** Contracts Performable—Contracts for Estate in Return for Services. An oral executed contract to the effect that, in return for personal services, the party shall, on the death of the other party to the contract, have the entire personal and real estate of such other party, is specifically enforcible, provided that the evidence is clear and convincing. Evidence held insufficient. (See Book of Anno., Vol. 1, Sec. 11286, Anno. 21.)

Headnote 1:  36 Cyc. pp. 674, 689.

*Appeal from Dallas District Court.*—W. S. COOPER, Judge.

NOVEMBER 24, 1925.

ACTION in equity against the heirs at law for specific performance of a parol contract with the deceased for the entire estate in consideration of services as housekeeper and nurse. From a decree for defendants, the plaintiff appeals.—*Affirmed.*

*White & Clarke* and *D. H. Miller,* for appellant.

*George J. Dugan* and *Lovrien & Lovrien,* for appellees.

VERMILION, J.—The appellant is the daughter of C. E. Doty and Rachel Belle Doty, both deceased. She claims to have rendered services for her parents as housekeeper and nurse during three distinct periods, one of a year and a half, commencing in 1915, one of nearly two years, commencing in 1918, and a third, after an interval of three months, of over two years, and until the death of both her parents, under a parol contract with her mother, the owner of the property, whereby she was to re-

ceive therefor the entire estate, consisting of real and personal property, at the death of her parents.

There is little or no question of the rendition of the services. The parents were both invalids for many years, and required constant care and attention. It is established without serious contradiction that the plaintiff, during the times alleged, lived with them, managed the household, did the cooking and housework, and gave her parents personal care of an exacting and unpleasant character, such as their invalid condition required. It is also shown that, when not living with them, she was there very frequently, working and caring for them. The difficulty is in respect to the proof of the alleged contract.

The law is well settled that such a contract, when it has been taken out of the statute of frauds by performance by the claimant, will be enforced; but the contract must be established by evidence that is clear, satisfactory, and convincing. *Groh v. Miller*, 196 Iowa 1367, and cases there cited.

The testimony relied upon to establish the alleged contract relates to numerous declarations of the deceased mother to the effect that the appellant was to have what was left when she and her husband were gone; that she wanted to make a deed for appellant, so that she would have whatever was left; and that, if appellant would stay with them as long as they lived, she could have what was left. Some of the declarations as testified to were to the effect that appellant and her daughter should have the property.

Appellant has been married twice, and the daughter was born during the first marriage. The evidence shows that the first period of her service for her parents was while she and her first husband were living together. Decedents were then living on a farm, and when the father became ill and incapacitated, appellant and her husband moved into the house with them. Appellant did the housework, and her husband managed the farm. Some of the declarations testified to were made at that time. Later, the farm was sold, and decedents moved to the town of De Soto. Appellant was then living with her husband in De Soto. She procured a divorce, and continued to live in the house she and her husband had occupied for a time. In

March, 1918, she and her daughter went to live with decedents. Concerning this she testified:

"I had no way to support myself, and was going to sell my goods and go to work. I had what I thought was a real good position to go to. I was going to go away; and when I went down in the afternoon with the last of the things, they [her parents] did not have any hired girl. I had a job of work somewhere else; was going to Minnesota. Had arrangements made with a family that was going to move up on a farm in Minnesota from Nevada. I couldn't very well go and leave the folks without a hired girl, and they couldn't get along without one, and I finally stayed."

She and her daughter continued to live with her parents until her marriage with her second husband, in January, 1920. After this marriage they lived with her husband's parents for three months. She then returned to the home of her parents for a few days, intending at the time to take a position at Floyd, which she had obtained by advertising. She testified:

"Something happened that changed that plan, and instead of staying only a few days, I continued to stay until their death."

Appellant's mother died in September, 1922, and the father, a few months earlier.

During all the times appellant lived with her parents, her daughter was with her, and they both received their support in the family, save for some money appellant received from her husbands. She received $35 per month from her first husband during a year he was in the army, and some money for clothing, and also some groceries from her second husband. For the latter she filed a claim against her mother's estate. Appellant testified that her mother generally paid her $3.00 a week while she was there; that she paid her $3.00 a week for the period immediately following her divorce from her first husband; that for three weeks she paid her $17.50 per week, and for a time $10. There was testimony from other members of the family that she admitted that her mother paid her $10 per week.

After the death of her mother, appellant filed a claim against her estate for services covering the periods of her resi-

dence with her parents, in the sum of $7,420. This claim she dismissed before the commencement of this action.

There is no occasion to repeat here our frequent observations upon the unsatisfactory character of the evidence of verbal admissions or declarations of a deceased person to affect the title to real estate, or upon the clear and convincing character such proof must possess, to accomplish that result. The appellant's conduct in leaving her parents on her second marriage and in twice seeking other employment tends strongly to contradict any claim of a binding contract prior to the last period of her service. The testimony of appellant's daughter, Pauline, is to the effect that, after the death of C. E. Doty, the grandmother wanted to "fix out a deed for mamma and I to have everything that was left of the properties," and that she said she wanted to do this because appellant had stayed with her nearly always, and had cared for them when they were sick, and she thought appellant deserved it. This indicates the purpose of the deceased to reward appellant for faithful services; not to convey property in pursuance of a binding contract. The same thing is true of many of the other declarations testified to. The fact that, in addition to receiving support for herself and daughter in the family, she received weekly wages, tends strongly to contradict the claim that her services were in consideration of the entire estate of deceased. Her claim filed shortly after the death of her mother, to recover the reasonable value of her services, is also contradictory of the contention that they were rendered under a contract for the specific consideration now claimed.

We have examined the record with care, and reach the conclusion that the evidence falls short of establishing with that clearness and certainty required in such cases a definite and enforcible parol contract to convey the property in question. The decree below is, therefore,—*Affirmed.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.