GEORGE W. CONLEE et al., Appellees, v. ROBERT E. CONLEE, Appellant.

No. 43524.

OCTOBER 20, 1936.

REHEARING DENIED FEBRUARY 12, 1937.

Johnson, Martin & Johnson, for appellant.

Hollingsworth & Hollingsworth, for appellees.

PARSONS, C. J.—This is a suit in equity. The plaintiffs were George W. Conlee, Amos A. Conlee, Laura Naylor, Nora Huett, Mary Woodside, Nancy Elvira Bullard, and George W. Conlee and Amos A. Conlee as administrators of the estate of

Reuben C. Conlee, deceased, and the defendant was Robert E. Conlee.

The petition sets out that the plaintiffs were brothers and sisters of Reuben C. Conlee, who died about June 23, 1933, and that each was interested in the property comprising the estate of said Reuben C. Conlee; and that he was the owner of an undivided one-half interest in certain real estate described therein, being about 490 acres.

Practically all of the propositions set out by which the plaintiffs claimed title were denied. The testimony and admissions in the pleadings show about the following facts:

That the parties hereto are all children of William Conlee and Jane Conlee, both deceased. William C. Conlee died in 1896, his wife surviving him for sometime thereafter. That at the time of the death of William C. Conlee he was seized of a certain tract of land, 160 acres, known as the "home place", which Reuben C. Conlee and Robert E. Conlee purchased of the surviving heirs and the widow of William C. Conlee, the father, soon after his death, the land being conveyed by quit-claim deed dated August 17, 1898.

It appears without controversy that Reuben and Robert Conlee subsequently purchased other pieces of land until their holding at the time of the death of Reuben, which took place in 1933, was 490 acres of land, besides personal property incident to the business they carried on,—farming, stock-raising and kindred occupations. Neither Reuben nor Robert ever married, but after the death of their father their mother resided with them, and she was kept by them.

The title to the land involved in the action, the home place and the land subsequently acquired, was in the name of Reuben and Robert Conlee. Prior to his death, Reuben Conlee executed a will, on March 12, 1918, reading as follows:

"In the name of God, Amen, I, Reuben C. Conlee being of sound mind and memory by knowing the uncertainty of life, do now make and publish this, my last will and testament that is to say:

I give all my property to my lawful heirs.

I hereby appoint Mrs. Jane Conlee as my executrix.

Dated at Davenport, Iowa, Mar. 12, 1918."

This will was duly probated and George W. Conlee and

Amos A. Conlee were appointed administrators of the estate of Reuben C. Conlee, and they joined as such with their brothers and sisters in this action.

It appears further that the mother, Jane Conlee, resided with Reuben and Robert until her death, June 14, 1930, and that at the time of the purchase of the home place and of the deeding of the same by the widow and heirs, Robert and Reuben entered into an oral agreement that they would become partners and joint tenants of the home place and of all property they might own or acquire, and that in the event of the death of one the survivor would be the owner of all the property held by Robert and Reuben Conlee. That after the making of this oral agreement Robert and Reuben Conlee engaged as partners and joint tenants, and operated all of their various businesses as such partners and joint tenants.

There was introduced into the evidence defendant's Exhibit A, which reads as follows:

"WE, Robert E. Conlee and Reuben C. Conlee, being partners and joint owners in all our real and personal properties; and, being mindful of our four sisters and three brothers, our legal heirs do hereby agree:

"That, in the event of death of either partner that the surviving partner shall hereby become sole owner of said property.

(Signed) Robert E. Conlee

(Signed) Reuben C. Conlee

(in ink) Subscribed in my presence by Robert E. Conlee & Reuben C. Conlee which they acknowledge to be their own voluntary act and deed.

"Witness my hand this 31st day of May, 1933.

"(Signed) W. H. South, J. P.

"In and for Lee Co., Iowa."

Charles W. Fruehling, who resided at Fort Madison, testified he was acquainted with Robert and Reuben, and had business dealings with them about 35 years before, concerning the loan of money on their home place for the purpose of lifting the mortgage on it, and he had a conversation with Reuben about the loan. That he had met both the boys together, and that he had a conversation with Reuben in which Robert took part. That Reuben first had a conversation with him about the loan, and that after he looked at the place he found the loan to be a safe loan.

564

The witness said Reuben called his brother Robert over, as he was interested in his mother's affairs as well, and that Reuben told him that he and his brother Robert were to assume all liabilities in the first place, and he said: "Us two fellows are taking this over as joint tenants, and as joint tenants what was one's was the other's and in case one died it referred it to the other party", and that Fruehling and his brother talked it over and found it to be a safe loan. The witness said on cross examination that he remembered this deal all these years as a joint tenancy, and that when he used the term "joint tenancy" he meant that in case one brother died all the property would go to the other brother. He said Reuben made the assertion in his conversation that he and his brother were joint tenants.

George Fruehling, a brother of the first witness, testified to practically the same things. The two Fruehling brothers were looking after this loan because the money belonged to their mother.

Another witness, Woods, testified to a conversation with Reuben in 1912 or 1913. He said he asked Reuben what he and his brother Robert were getting so much land for, and he replied that they owned the land as joint partners, joint tenants; that if one of them died the property would go to the other,—that is Robert and Reuben.

Another witness, Mrs. Whight, testified that she had a conversation with Reuben in which he told her that he and Robert were joint tenants. Her husband, Raymond Wright, testified that Reuben told him that whichever one died first he intended the other to have it to live on the rest of his days.

A witness Bullard testified that he talked with Reuben in 1932 and he said to Reuben, "When you are dead and gone they will fuss over it", and he replied, "I don't think so, I always really helped the whole family out and my estate goes to Robert, we have lived together, farmed together, and I think they will be quiet when they know that my property goes to Robert at my death."

Mrs. Kate Ballam testified that she lived in Lee county 54 years, and knew Reuben C. Conlee in his lifetime, and that she had a conversation about his brother Robert. He said he and Robert were joint owners of all his property. She said she kept company with Reuben at one time; that they were engaged to be married, and she spoke to him about these business affairs

and said she did not like the arrangements very well and quarreled over it, and broke the engagement.

Another witness, Bunker, testified that he was employed by Reuben and Robert on the farm, and that Reuben told him he did not have to hunt either one; that either one would pay him, and they both paid him off at different times. He said he bought a team of horses of the boys on time, and Reuben said, ''In case of death, just pay the other one''. That was in September 1930. He said he worked for the boys better than twenty years ago.

Dr. Casey testified that he had doctored the family for about 40 years; that Reuben told him how the property was held and that he and Robert were joint owners of the property.

The defendant, Robert E. Conlee, testified that never from the time they started until the death of Reuben, was there any division between them, and that the paper Exhibit A contained his signature.

A. M. Lowrey testified that the signatures on Exhibit A were those of Reuben C. and Robert E. Conlee, and that he had verified them with their signature card he brought with him. This was the president of the Fort Madison Savings Bank. Exhibit A referred to was a copy of the agreement or declaration made by Robert E. and Reuben C. Conlee, heretofore set out in the record.

Mattie B. Clements testified that Reuben had business dealings with her on October 8, 1932, when she loaned him $50 and that he signed the note R. E. and R. C. (Conlee), and that when he signed it he said: ''I will put my brother's name down on it because we are joint owners and if anything should happen to me, why, your note will be paid.''

George Standley testified that he asked Reuben, ''What kind of partnership have you fellows got, anyhow?'' and he replied, ''We are joint partners—whatever is mine is his—if I want to spend a hundred dollars, I don't ask him, and if he wants to spend a hundred dollars, he don't ask me.''

A number of witnesses were introduced by the plaintiffs as to these various matters; none of them dispute any of the matters and things testified to by the other witnesses who talked with Reuben C. Conlee. They testified to conversations with Robert Conlee, and said he claimed to be the owner of all the property because of an instrument entered into by the two brothers. He did not make any other claims.

George W. Conlee testified that Robert claimed to be the owner of all the property ever since Reuben's death. He said he had seen the paper (Exhibit A) the day it was written; had seen a rough draft of the writing before it was finally made.

Amos Conlee, one of the plaintiffs and an administrator, on cross examination, said that ever since the death of Reuben, Robert claimed to be the owner of all the property under an agreement, Exhibit A.

And a witness, Nora Huett, testified that after the death of Reuben, Robert claimed he had been a partner of Reuben and claimed all the property under the agreement introduced as Exhibit A.

Such is practically all the material evidence that was introduced in this case bearing upon the question of the relation between Reuben and Robert and their property dealings. When the case was submitted to the court it finally entered decree in favor of plaintiffs. He held that Robert and Reuben were tenants in common, holding in the finding, and made an order, and decree was entered accordingly, and from this decree an appeal has been made to this court by Robert E. Conlee, defendant.

This record raises some questions. First, is what is shown here sufficient to create a joint tenancy? Second, can a joint tenancy be created by the acts of the parties? Third, did the agreement, defendant's Exhibit A, set out herein, give to the defendant an enforcible right to the interest of Reuben in the partnership, such as to cut out persons who might claim under Reuben by virtue of heirship?

It will be noticed that the will in this case was made in 1918; that the agreement, Exhibit A, was made on May 31, 1933, prior to the death of Reuben, which took place June 23, 1933. And there is no evidence in the record to impeach the validity of the agreement, Exhibit A, or to show that it was not entered into; or that Reuben was not competent to enter into such an agreement at the date it was entered into.

The will speaks only from the death of the testator. If there was a joint tenancy, or if Exhibit A was effective for the purpose of transferring the property of Reuben in the event of his death to Robert, then the parties claiming under the will are not entitled to any relief in this action, whatever, and the case should have been dismissed and judgment entered for defendant for costs.

We will first discuss the question of the effect of Exhibit A. It first recites that the parties are partners and joint owners in all real and personal properties; second, that in the event of the death of either partner the surviving partner shall become sole owner of said property. No attempt was made to suppress this instrument. It was placed of record in the county in which the real estate and personal property were situated. Except for giving publicity to it, we do not see that the placing of record makes any difference. But it was published. So whether this be recorded as an agreement or a mere declaration, we have signed by Reuben an instrument which declares that the parties were partners and joint owners in their real and personal property, and which provides that in the event of the death of either partner the surviving partner shall become the sole owner of the property.

If this instrument were made upon a consideration, it is not against public policy. In the event Robert had died prior to the death of Reuben, Reuben would become the owner of all the property, if this instrument is valid for the purposes for which it was drawn, and likewise, Robert would become the owner in the event of the death of Reuben, of all the property. This has every essential of a contract.

At the conclusion of the evidence in this case the court made certain findings. Among those material are that the instrument referred to as Exhibit A was testamentary in character, not properly witnessed, and would not support the contention of joint tenancy existing; second, that Robert E. Conlee should account to the administrators of the estate of Reuben, and turn over to them at once the property to which the deceased was entitled, after the payment of partnership debts, so that the estate could be administered without further delay; that if the surviving partner, Robert Conlee, failed to pay such partnership debts and make such accounting within thirty days from the entry of the decree, a receiver should be appointed for the purpose of liquidating the partnership affairs and to carry out the orders and directions of the decree. In the decree the heirs were to recover, being the legatees under the will.

The question of course is triable de novo in this court, being an equity proceeding.

■■■ In the brief of appellees it is contended that the land was all purchased by Robert E. Conlee and Reuben C. Conlee,

and that they took deeds thereto. That the deeds without exception indicated that the grantees took as tenants in common and not as joint tenants. That the deeds were taken several years apart, and that upon the face of each one a clear and positive presumption arises that they created a tenancy in common as between the grantees, citing Code section 10054 of the Code, which provides:

"Conveyances to two or more in their own right create a tenancy in common, unless a contrary intent is expressed."

Such is the law. In Hoffman v. Stiger, 28 Iowa 302, 306, it is said:

"The rule in this country is that all the estates vested in two or more persons are to be deemed tenancies in common unless a different tenure is clearly expressed or implied in the instrument creating the estate."

So without question, the conveyances to the two brothers created not a joint tenancy, but an estate in common. Such is the rule declared by statute in this state.

■■■ The question then arises, what would be the rule if the owners of the estate in common entered into such an agreement as is involved in the contention of defendant? In other words, were the rights changed from that of tenants in common to such as would result had the conveyances of these different tracts of land been in such form as to create a joint tenancy in the beginning? The answer to this question is the solution of this case.

The various declarations of Reuben, and the writing, Exhibit A, must be resorted to in answering the question as to the intention of and arrangement between Reuben and Robert, and the effect of these and their efficiency in law to carry out their intentions, so as to give the right of survivorship. It seems to us an examination of the evidence would convince anyone that it was the intention of Reuben and Robert that all their holdings were held in joint tenancy; i. e., or at least that the survivor of the two should take the whole property on the demise of the other, and that the survivor would succeed to the rights of the property accumulated, as in joint tenancy. The writing, Exhibit A, is very strongly corroborative of the facts testified to by the various witnesses as to the matter, so if the arrangement

between the two brothers was as stated in the contention of the defendant and acknowledged in writing, there being nothing in law to prohibit it, then at the death of Reuben, Robert succeeded to all of his rights in the property involved. This finds support in the following cases: Stewart v. Todd, 190 Iowa 283, 173 N. W. 619, 180 N. W. 146, 20 A. L. R. 1272; Stonewall v. Danielson, 204 Iowa 1367, 217 N. W. 456; Stiles v. Breed, 151 Iowa 86, 130 N. W. 376; Horner v. Maxwell, 171 Iowa 660, 153 N. W. 331; Francis v. Francis, 180 Iowa 1191, 162 N. W. 839; Bevington v. Bevington, 133 Iowa 351, 110 N. W. 840, 9 L. R. A. (N. S.) 508, 12 Ann. Cas. 490; Stennett v. Stennett, 174 Iowa 431, 156 N. W. 406; Jordan v. Doty, 200 Iowa 1047, 205 N. W. 964; Garman v. Wettengel, 199 Iowa 1150, 203 N. W. 266; Ozias v. Scarcliff, 200 Iowa 1078, 205 N. W. 986.

In Stewart v. Todd, the court said at page 293:

"While it is true that any effort at a testamentary disposition of property can be made effectual only by following the statute governing the making of testamentary instruments, yet it does not follow that two parties cannot make an agreement, upon consideration, touching the disposition of the property of each upon the death of either." The court also said at page 295: "No matter what the provisions of the will are, when probated, it confers no rights in property not owned by the testator at the time of her death, and in no event could it be made to avoid contractual obligations assumed during her life."

In Stonewall v. Danielson, there were three brothers engaged in farming operations in Calhoun county, and they acquired property approximating $100,000. They had an oral agreement that they would carry on their business and the survivor should succeed to all the rights of the others. The court held that two or more persons may validly orally agree that their accumulations of real and personal property shall be held and owned jointly, and that, upon the death of one of the parties, the property shall pass to the survivors, and that the final survivor shall take the property absolutely.

Stiles v. Breed holds that an oral contract of the owner of property to adopt the child of another, by which he agrees to give the child all his property upon his death the same as his own child, provided the child lives with him until his majority, is valid.

In Homer v. Maxwell the court held that an oral contract to give and to will all of one's property to a child, if the parent of said child will permit the promisor to adopt said child is not merged in subsequently prepared articles of adoption, drawn in strict compliance with the statute and signed and acknowledged by the parent of the child and the adopting parties, but not recorded by the adopting parents, said articles containing no provision as to property rights.

In Francis v. Francis the evidence was held sufficient to establish the making of a contract between a brother and sister by which all property accumulated by the brother should belong to the sister on the death of the brother. The court further held that the contract made between brother and sister may be sufficiently shown by evidence that the brother stated the terms of the proposed contract to his mother, in a conversation in which the sister took no part, and that the sister thereafter acted on such stated terms, especially where the fact that such contract was made is supported by disinterested corroborating testimony.

In Bevington v. Bevington the court held enforcible a parol gift of land where the evidence reviewed and held sufficient to establish a gift where the donee went into possession and made valuable improvements.

In Jordan v. Doty, the court held that an oral executed contract to the effect that, in return for personal services, the party shall, on the death of the other party to the contract, have the entire personal and real estate of such other party, is specifically enforcible, provided that the evidence is clear and convincing.

In Garman v. Wettengel, an oral contract for all of the property, real and personal, of a party deceased, in return for services performed, was established and held sufficient and enforcible. Ozias v. Scarcliff was a case wherein a parol contract to will or deed land, followed by possession of the land by the contemplated devisee or grantee, and by the making of valuable improvements on the land by the latter in reliance on the contract, is specifically enforcible, if the proof is sufficient, in the light of all the circumstances, to carry conviction to the mind of its essential credibility, held enforcible.

We think in this case the declarations of Reuben to the various parties set out in the testimony, coupled with the execution of Exhibit A, leave no doubt whatever that the arrangement between the brothers was as contended by the defendant

in this case, and that the survivor takes all, and that the plaintiffs are not entitled to anything. This consideration, it seems to us, practically fully disposes of every issue in this case.

Fleming v. Fleming, 194 Iowa 71, 81, 174 N. W. 946, 950, cited and relied upon by appellee herein, is not an authority governing the facts in this case. That was a suit by a widow to establish her right of dower. The court in considering the case put stress upon the fact that these parties had a purpose and intent to create a partnership, and the purpose to fix the rights of each in the property accumulated and to be accumulated must be assumed, and a joint tenancy was denied largely because of the status of the wife. The court said:

"In view of the legal status of the wife, in view of the relationship which she sustains to her husband, in view of those provisions of statute that protect and guard her interest during his life and after he is dead, it would seem to be against the policy of the law, expressed in the statutes, to permit men to legally get together and agree with each other that, upon their death, their wives and children shall receive no portion of the estate which they spent their lives in accumulating. It is a clear fraud on the marital rights of the wife."

In another case, McKinnon v. McKinnon, (C. C. A.) 56 F. 409, decided by Sanborn, Thayer and Caldwell sitting as Circuit Judges in this circuit, where a physician and his nephew entered into a partnership agreement which provided that in the event of the death of the senior member of the firm all his property, personal and otherwise, which he held at the time of his death, was to go to the junior member, held this was not a testamentary disposition of property, and although not executed with the formality required in a will, the nephew took all. The three judges deciding this case were three as able judges as ever sat on a Circuit Court of Appeals.

In Baker v. Syfritt, 147 Iowa 49, at page 61, 125 N. W. 998, 1003, the court, speaking through Judge Weaver, said:

"A contract is none the less a contract because it contains provisions which are testamentary in character, nor is a will any less a will, if properly executed, because it embodies contractual features."

■■■  All of the rights claimed by the plaintiffs are derived

from the will of Reuben Conlee. The will speaks only from the death of Conlee. Conlee's interest ceased with his death under agreements between the parties as testified to by the witnesses and corroborated by Exhibit A.

So in considering this case we think that under all the circumstances shown by the record that at the death of Reuben C. Conlee, Robert E. Conlee succeeded to all of their accumulations, and that the plaintiffs have no interest therein. For these reasons set forth herein the decision of the district court is reversed and that court is directed to enter decree in accordance with this decision, or, either party may have the decree entered in this court.—Reversed and remanded with instructions.

DONEGAN, HAMILTON, ALBERT, and STIGER, JJ., concur.