**In the Matter of the ESTATE OF Mary K. BOLDT, Deceased.**

**No. 83–106.**

Supreme Court of Iowa.

Dec. 21, 1983.

---

Kevin P. Shea and Jane Spande, Cedar Rapids, for appellant devisee.

Gerard J. Glaza, Cedar Rapids, for appellee executor.

UHLENHOPP, Justice.

This appeal involves the construction of a will with reference to the disposition of joint tenancy property. Our review is de novo. *Oxley v. Oxley*, 262 N.W.2d 144, 147 (Iowa 1978).

The following appears from the documents and testimony in evidence. Mary K. Boldt, testatrix, owned accounts in financial institutions as well as real estate and tangible personal property. She was survived by two daughters, Jeanne and Friederike. At the time of her death, most of her accounts were in joint tenancy with Friederike; testatrix had provided the money in the accounts.

Testatrix had made prior wills, all drawn by the same scrivener, in which she had divided her property between the daughters with substantial equality; she generally confirmed joint tenancies with Friederike or Jeanne and equalized them with gifts of property.

On October 10, 1980, testatrix made her last will. The will first directed the payment of debts and then contained the following paragraph II:

I give, devise and bequeath all of the rest and residue of my property, whether such property be real, personal or mixed, and whatsoever kind and character and wheresoever situated, to my two children, Jeanne M. Vogel and Friederike Boldt, the survivor or survivors thereof. I hereby revoke any joint tenancies that I might have created in the past with either of the beneficiaries as they made no contribution to the joint tenancies and the joint tenancies were created as a convenience for myself. It is my will that my personal belongings be divided equally, but in value only, and that matching sets or items not be broken up, but evaluated and go as a unit to one or the other beneficiary. The beneficiaries know the various items that I desire each to have, and I expect them to honor my wishes.

Finally, the will appointed a bank as executor.

Paragraph II of the will and the testimony of the scrivener, introduced in evidence without objection, leave no doubt that testatrix desired the daughters to receive equal shares of all the property. The scrivener testified that "she wanted the two daughters to share equally." He also testified without objection:

Q. Did you get the impression that when you talked with Mary [testatrix] regarding this final will, she wanted the

daughters to share equally? A. That is what she informed me at the time.

■ The clause in paragraph II of the will purporting to revoke the joint tenancies was of no legal effect by virtue of the rule in *Conlee v. Conlee*, 222 Iowa 561, 269 N.W. 259 (1936). In that case Reuben C. Conlee placed property in joint tenancy with Robert E. Conlee. Reuben's will left all his property to his heirs. This court held that on Reuben's death the joint tenancy property belonged entirely to Robert, not to the heirs, because Reuben's interest in the joint tenancy property ceased with his death and did not pass under his will.

Testatrix in the present case died on December 9, 1981. The joint tenancy accounts with Friederike amounted to $44,378.94. Testatrix owned other property worth $123,706.32. If Friederike took the joint tenancy accounts plus half of $123,706.32, she would receive $106,232.10, while Jeanne would receive half of $123,706.32 or $61,853.16.

The executor named in the will refused to accept appointment. The probate court thereupon appointed Friederike as executor. The scrivener of the will represented her as such.

Aware of testatrix' desire to divide the property equally, the scrivener met with the two daughters, explained that intention to them, and endeavored to obtain a family settlement between them. Nothing came of his efforts. Eventually Friederike asserted a right to the joint tenancy accounts and to half of the other property. The scrivener thereupon prepared the inheritance tax returns and proposed distribution with Friederike receiving the joint tenancy accounts and the two daughters receiving the nonjoint property equally.

Jeanne objected in the probate proceeding to that distribution of the assets. She contended that the daughters should share equally. This would mean each daughter would receive assets worth approximately $84,042.63.

The probate court construed the will. At trial in probate, the scrivener gave testimony by deposition. He testified that he told testatrix when she made her will she could not revoke the joint tenancies by will and she would have to revoke them at the financial institutions, but that she never did so. He also testified, "As a matter of fact, that's one of the rare times that Mary never followed through on anything. As a matter of fact, I don't know of any other time she didn't follow through on something." As to the prior wills in which testatrix purported to "confirm" the joint tenancies, the scrivener testified:

Q. You said in the other wills she confirmed the joint tenancies. Was language to that effect placed in the wills? A. Yes.

Q. And again did you advise her? A. I said it's superfluous. "I don't care, I want it in."

Testatrix being dead, we do not have her version of these conversations. She speaks only through the will.

The probate court, citing *Conlee*, held that the joint tenancies could not be severed by will, and that Friederike took the joint tenancy accounts and the two daughters took the rest of the property in equal shares. Jeanne appealed.

I. The will gave testatrix' property to her two children and attempted to revoke the joint tenancies. The surviving joint tenant claimed the joint tenancy property and half of the rest of the property. The other daughter claims that the will shows testatrix intended the two daughters are to share equally in everything.

We have no doubt that testatrix actually intended the two daughters are to share everything equally. Testatrix attempted to accomplish that result by stating, "I hereby revoke any joint tenancies that I might have created ..."—something that she could not do by will. She could have achieved her objective by stating something along this line: "In order to accomplish an equal division of all property, the full value of real and personal properties in which I am a joint tenant shall be considered as though they were part of my estate, and the full values of the respective

joint tenancy properties shall then be deducted from the shares of the respective joint tenants in making distribution."

■ The problem is that testatrix did not so state in her will. We thus encounter the principle that wills cannot be rewritten or reformed by courts, under the guise of construction, in order to reach a desired result. *In re Estate of Giffin*, 166 N.W.2d 800, 801 (Iowa 1969) ("Courts have the power to interpret and construe a will but may not rewrite it or change its terms by construction."); *Martin v. Beatty*, 253 Iowa 1237, 1243, 115 N.W.2d 706, 710 (1962) ("Obviously the court may not make a will for the testator, nor impose upon the will a forced or unnatural construction to accomplish what may now seem to be a more just or appropriate distribution of the estate."); *In re Syverson's Estate*, 239 Iowa 800, 809, 32 N.W.2d 799, 803 (1948) ("It is not the province of a court to make, remake, or try to improve the will of such a testator."); *In re Heckmann's Estate*, 228 Iowa 967, 975, 291 N.W. 465, 469 (1940) ("The court cannot make a new will."); *Gilmore v. Jenkins*, 129 Iowa 686, 692, 106 N.W. 193, 195 (1906) ("a court cannot correct a mistake in a will, or make a new will for the parties").

II. The case, however, presents a classic illustration of a required election under a will. While testatrix had no legal power to revoke the joint tenancies by will, she purported to do so. Confronted with the will, Friederike had two alternatives: she could accept the will as written, let the joint tenancy property become part of the estate for computing distribution, and take half of all the property, as she was urged to do, or she could refuse to accept the attempted revocation of the joint tenancies. But she could not accept the part of paragraph II of the will giving her half of the assets and reject the part of that paragraph revoking the joint tenancies. Those two parts were woven together in the paragraph; testatrix in effect offered Friederike alternatives.

No necessity exists to decide whether testatrix knew or did not know that she could not legally revoke the joint tenancies by will. If she knew, she deliberately required Friederike to elect. If she did not know, in paragraph II she nonetheless put Friederike to a choice.

The doctrine of election in the law of wills is described in the following from 97 C.J.S. *Wills* § 1237 (1957):

The doctrine of election, as applies to wills, is the obligation imposed on a person to choose between two inconsistent or alternative rights or claims in instances where it was clearly the intention of the testator that he should not enjoy both. It is based on the equitable ground that a person cannot be permitted to claim inconsistent rights with respect to the same subject matter, and that he who accepts the bounty of the testator must do so on such terms and conditions as the testator may choose to impose.

To the same effect is 80 Am.Jur.2d *Wills* § 1607, at 663–64 (1975):

The doctrine of election in connection with testamentary instruments is the principle that one who is given a benefit under a will must choose between accepting such benefit and asserting some other claim he has against the testator's estate or against the property disposed of by the will. One who elects to accept a benefit extended to him by a will is bound to give effect to all the provisions of the instrument and perform the burdens imposed on him therein, including the renunciation of any inconsistent rights or claims. The theoretical basis of the doctrine is usually referred to the principles of estoppel, to the broad maxim that "he who seeks equity must do equity," or to the proposition that a testamentary gift is subject to the implied condition that the donee shall conform to the other provisions and stipulations of the will. The doctrine has been said to derive from the Roman or civil law.

. . . .

While there are a number of specific situations in which the doctrine has been

invoked, the two most common are presented where a testator makes a provision for his surviving spouse and the question arises whether the latter must elect between such provision and his or her marital rights in the testator's property, and where a testator leaves property to a designated individual and also attempts to dispose of property owned by such individual or with respect to which he may assert some independent claim or right.

■ Decisions which require a devisee to exercise an election when a will purported to devise joint tenancy property include *Water's Estate v. Jennings,* 24 Cal.App.3d 81, 100 Cal.Rptr. 775 (1972) (residence held by husband and wife in joint tenancy; husband devised half of residence to daughter subject to life estate to wife; election by widow required between joint tenancy and devise); *Young v. Biehl,* 166 Ind. 357, 77 N.E. 406 (1906) (devise of land owned by entireties; election required); *Thurlow v. Thurlow,* 317 Mass. 126, 56 N.E.2d 902 (1944) (devise of stock held in joint tenancy; survivor elected to accept devise by accepting will); *Job Haines Home v. Keene,* 87 N.J.Eq. 509, 101 A. 512 (1917) (property devised which was held by entireties; survivor put to election); *Bennett v. Bennett,* 70 Ohio App. 187, 45 N.E.2d 614 (1942) (survivorship bank account, election required; similar to present case). *See also Grosvenor v. Durston,* 25 Beav. 97, 53 Eng.Rep. 573 (1858) (joint tenant of securities; election); *Coates v. Stevens,* 1 Younge & C.Ex. 66, 160 Eng.Rep. 28 (1834) (joint tenancy in bank annuities; election). When an intention to devise joint tenancy property does not appear from the will—contrary to the case here—an election is not required. Illustrative of such decisions is *Benton v. Alexander,* 224 N.C. 800, 32 S.E.2d 584 (1945).

■ In the present case testatrix clearly intended to devise the joint tenancy accounts, as she expressly purported to revoke the joint tenancies and gave all of her property not needed for debts to the two daughters. Friederike is thus required to elect between taking the will as it is or rejecting the will.

III. What are the consequences of Friederike's accepting the will as written or rejecting it?

A. If Friederike elects to accept the will as written, she may actually take the joint tenancy property of $44,378.94, but for computation purposes it will be considered at full value as though it were part of the estate. As the other property in the estate amounts to $123,706.32, the total assets in the estate will be considered to be $168,085.26. In the distribution, each daughter will receive $84,042.63. Friederike will receive $44,378.94 from the joint tenancy property and $39,663.69 from the estate, and Jeanne will receive $84,042.63 from the estate. The exact figures might differ somewhat at time of distribution, but the method we have given will apply.

■ B. If Friederike rejects the will, distribution will be somewhat more complicated. An election by a devisee to reject a will nullifies a devise in the will to that devisee; the property which would otherwise pass under the devise normally passes instead under the residuary clause in the will. But if the devise in question is itself the residuary clause, or if the residuary devisee cannot take the gift for some reason, then the property in the renounced devise passes under intestacy laws. *Franklin v. Hastings,* 253 Ill. 46, 97 N.E. 265 (1911); *Crocker v. Crocker,* 230 Mass. 478, 120 N.E. 110 (1918); *Re Uihlein's Will,* 264 Wis. 362, 59 N.W.2d 641 (1953).

The assets here which were not in joint tenancy amounted to $123,706.32. Upon Friederike's electing to reject the will and taking the joint tenancy property, half of $123,706.32 or $61,853.16 would normally pass under the residuary clause or as intestate property. In this case it cannot pass under the residuary clause. That clause has two residuary devisees, Friederike and Jeanne. Friederike cannot take half under the residuary clause, as she elected to reject the will. Jeanne cannot take that half under the residuary clause either, as that

clause gives her only half of the residuum and she is receiving her half. *See Franklin v. Hastings*, 253 Ill. 46, 97 N.E.2d 265 (1911). (Under the terms of the residuary clause Jeanne could take the whole of the residuum only if she survived Friederike, but Friederike is still alive.) The nonjoint property which would have gone to Friederike absent an election to reject the will thus passes as intestate property to the two daughters in shares of $30,926.58 each. Friederike will thus receive $44,378.94 as joint tenancy property and $30,926.58 as intestate property or a total of $75,305.52. Jeanne will receive $61,853.16 under the residuary clause as her half of the nonjoint property of $123,706.32, plus $30,926.58 as intestate property, or a total of $92,779.74. Again the exact figures might vary at time of distribution.

IV. Within thirty days from date of procedendo, Friederike may file with the clerk of district court a written election to accept the will as written or to reject the will. If she elects to accept the will as written, distribution shall be made under the method in division III–A of this opinion. If she elects to reject the will, distribution shall be made under the method in division III–B of this opinion. If she fails to file an election within thirty days, she will be conclusively presumed to accept the will as written, and distribution shall be made under the method in division III–A of this opinion.

Appeal costs assessed to the estate.

REVERSED AND REMANDED.

REYNOLDSON, C.J., and McCORMICK and SCHULTZ, JJ., concur.

WOLLE, J., concurs in result.