**In the Matter of the ESTATE OF Mae T. STEED, Deceased.**

**No. 18486.**

Supreme Court of South Dakota.

Considered on Briefs May 23, 1994.

Decided Sept. 14, 1994.

Richard R. Rahn, Sioux Falls, for appellants Margie A. Houston and Pearl Peterson.

Merle A. Johnson of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for appellee Katherine E. Peterson.

DOBBERPUHL, Circuit Judge.

## PROCEDURAL HISTORY

Margie A. Houston (Margie) and Pearl Peterson (Pearl), sisters of decedent, Mae T. Steed (decedent), filed a petition seeking a determination that the decedent, by the terms of paragraph 6 of her will had revoked all joint tenancies of personal property. Margie and Pearl further sought an order placing the joint tenancy property in the residue of decedent's estate.

Katherine E. Peterson (Katherine), also a sister of decedent, filed a response to this petition in which she sought to have the joint accounts distributed to the surviving joint payees.

Judgment was entered holding that decedent had failed to properly revoke any joint accounts by the provisions of her will as required under SDCL 30–23–46. The circuit court held that the terms of SDCL 30–23–46(5) require that each joint account, to be changed or modified by will, must be individually identified in the will. Because decedent failed to individually identify each joint account which she may have intended to change or modify in paragraph 6 of her Last Will and Testament, all joint accounts were to be paid to the surviving joint payees as

designated on each joint account. Margie and Pearl appeal. We affirm.

## FACTS

On March 28, 1990, decedent executed a Last Will and Testament in the state of South Dakota which purported to revoke all former wills and testamentary papers. Paragraph 6 of the will states, "I hereby intentionally revoke any joint tenancies or trust arrangements commonly called 'Totten Trusts' by this will." Margie and Pearl argue that through this clause decedent intended to revoke any joint bank accounts and certificates of deposit with rights of survivorship, and include them in the residue of her estate. Katherine argues that decedent intended these accounts to be distributed to the surviving joint payees as designated on each account.

Decedent came from a large family of nine girls and two boys. At the time of her death on August 11, 1992, decedent was survived by four sisters, Margie, Pearl, Katherine and Erma Stevens, who is since deceased. Margie resided in Pequot Lakes, Minnesota, as did Pearl. Pearl however, had only lived in Pequot Lakes for four years at the time of decedent's death. Prior to that, she had lived in Compton, California for thirty years. Prior to her own death, Erma Stevens had resided in Long Beach, California since 1965. Katherine was residing in Fridley, Minnesota, at the time of decedent's passing.

Decedent was an elderly lady at the time of her death. She had been a widow for many years, had several sources of income and was able to live quite comfortably from day to day. Her home was paid for and she had no children. Further, she was quite thrifty and was able to place a considerable amount of her income in various savings vehicles.

There were a number of joint accounts in existence at the time of decedent's death. Some of these joint accounts were created prior to execution of her will while others were created subsequent to execution of the will. A number of the joint accounts were U.S. Savings Bonds. Pursuant to federal regulation, designations of joint payees on U.S. Savings Bonds cannot be changed by will. This fact was conceded by counsel for Margie and Pearl and acknowledged by the circuit court.

Among the joint payees of the various U.S. Savings Bonds were Pearl and Katherine. Margie was not among those listed as a joint payee on any of the U.S. Savings Bonds. This is also true of the joint accounts which Margie and Pearl are now seeking to have included in the residue of the estate. Both Pearl and Katherine were listed as joint payees while Margie was absent from the list of joint account owners. Katherine was, however, named as a joint payee on joint accounts totalling considerably more than those joint accounts with other joint payees.

Additionally, by the terms of her will, decedent left all of her "personal effects, household goods, tools, yard equipment and car, in equal shares" to Pearl and Katherine. Again, Margie was omitted. The residue of her estate was left in equal shares to all four of her then surviving sisters.

Katherine testified that she and decedent were very close. While Katherine was attending school in Pipestone, Minnesota, decedent would frequently visit her and take her to stay in Thomas, South Dakota, where she was living at the time. Even though Katherine resided in Fridley, Minnesota at the time of decedent's death, they remained quite close, writing to each other on a weekly basis and talking on the phone at least once a month.

At trial, Katherine testified that although decedent would from time to time discuss various financial matters with her, she was basically unaware of decedent's financial situation. Katherine further testified that if decedent would have needed assistance in paying her bills or help in meeting her financial obligations at any time prior to her death, she certainly would have helped her in that capacity.

## DECISION

### ISSUE ONE

DID THE TRIAL COURT ERR IN FINDING THAT DECEDENT CREATED THE JOINT ACCOUNTS FOR THE

BENEFIT OF THE NONDEPOSITING JOINT PAYEES, RATHER THAN FOR HER OWN CONVENIENCE?

 An account opened in joint names raises a rebuttable presumption that the creator of such an account intended the usual rights of survivorship to attach to it. *Matter of Estate of Kuhn*, 470 N.W.2d 248, 250 (S.D.1991); *Matter of Estate of Krause*, 444 N.W.2d 4, 9 (S.D.1989); *Roth v. Pier*, 309 N.W.2d 815, 816 (S.D.1981); *Kirsch v. First Nat'l Bank of Watertown*, 298 N.W.2d 71, 72 (S.D.1980); *Miles v. Hanten*, 164 N.W.2d 601, 602 (S.D.1969); *Wagner v. Wagner*, 83 S.D. 565, 163 N.W.2d 339, 342 (1968) (quoting *Estate of Pfeifer*, 1 Wis.2d 609, 85 N.W.2d 370, 372 (1957)). "The principle is the same whether the asset is a bank account or a C.D." *Estate of Kuhn, supra*. In order to rebut the presumption that an asset held in joint tenancy passes to the surviving joint payee upon the death of the first, the party seeking to negate the presumption must show with clear and convincing evidence that the original depositor or purchaser did not intend the usual rights of survivorship to attach to the joint asset, but instead intended the arrangement for her own convenience. *Estate of Kuhn, supra; Kirsch, supra; Wagner, supra*.

 Our well established line of caselaw has been codified at SDCL 30–23–46(1), which attaches a presumptive right of survivorship to all joint accounts by stating in pertinent part:

Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent *unless there is clear and convincing evidence of a different intention at the time the account is created*. (emphasis added). The controlling consideration is the intention of the original depositor at the time the accounts were created. Whether the joint accounts in question were created by decedent for her own convenience or for the benefit of the nondepositing joint payees is a question of fact to be determined from all the facts and circumstances in the case. *Wagner, supra*, 83 S.D. at 571, 163 N.W.2d at 342. We review the trial court's determination of the original depositor's intention under the "clearly erroneous" standard. *Estate of Kuhn, supra*, at 251. "The question is not whether this Court would have made the same findings that the trial court did, but whether, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *Id.* (quoting *Kirsch*, 298 N.W.2d at 73 (citing *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455, 459 (1970))).

 The trial court found that there was no clear and convincing evidence that decedent created the joint accounts in question for anything other than the benefit of the surviving joint payees.[1] The evidence in the record clearly supports this finding.

In their brief, Margie and Pearl argue that there is "strong evidence that Mae T. Steed created the subject joint bank accounts solely for her own convenience." However, they attempt to support this argument by relying mainly on a page of five hypothetical questions in which their counsel attempted to lead Katherine into admitting that the accounts were created for decedent's convenience.[2]

---

1. The trial court specifically stated in its Finding of Fact V:

 That at the time each joint account was created, decedent intended that at her death, the account belonged to the surviving party or parties as against the estate; that there was no evidence of a different intention as prescribed by SDCL § 30–23–46(1).

2. The testimony to which Margie and Pearl cite is as follows:

 Q. (By Mr. Lundrigan) Would you have been the person that would have been most turned to by Mae Steed to help her if she needed help in her financial matters?

 A. (By Katherine Peterson) Yes.

 Q. Would you have been the person that assisted her in paying her bills and helping her meet her obligations?

 A. Yes.

 Q. If she needed to cash in one of these instruments at some time after she created them, would you have been the person that would have done that for her?

 A. Well, I suppose, 'cuz I was on—my name was on there.

 Q. So, it would have been convenient to her to have you help her?

 A. Yes.

 Q. Would you have done any of that kind of work before her death.

We find this argument to be without merit. A careful reading of the testimony in question shows simply that Katherine was a loving and caring sister and that she *"certainly would have"* helped decedent with her financial matters *if* such help would have been needed. There is no evidence that decedent ever needed this assistance, or that Katherine ever helped her pay her bills or meet her financial obligations in any way. The evidence tends to show that Katherine was unaware that she was named as a joint payee on the joint accounts at issue. Instead, the facts establish that decedent was very conservative with her money. She was able to live comfortably as a result of her various sources of income and was able to acquire a considerable amount of assets which she used to purchase various investments, including the joint accounts in question.

Although the evidence shows that decedent was an elderly woman, there was no showing that she suffered from serious health problems which may have forced her to seek help with her financial matters. Just one year prior to her death she was able to travel by automobile from Sioux Falls to Pequot Lakes, Minnesota to visit her sisters. This would not evidence someone who was "ailing" as claimed by Margie and Pearl.

Finally, and most importantly, the facts show that from 1979 until April 15, 1992, decedent established seventeen joint bank accounts naming various joint payees and allowed each to automatically continue on its renewal date. At least seven of these accounts were established *after* the execution of decedent's will. The last of these joint accounts was established just four months

A. Oh, I certainly would have.

**3.** At the time decedent's will was executed in March of 1990, SDCL 30–23–46(5) provided in part: "A right of survivorship ... cannot be changed by will, unless the testator has clearly indicated the testator's intention that the terms of the account should be changed or modified to express the testator's true intention." This statute was then amended in 1990 to read as it did at the time of decedent's death. The trial court concluded that SDCL § 30–23–46(5) as written at the time of decedent's death was controlling.

Katherine points out in her brief that we have not previously addressed the issue of whether the law in existence at the date of the will execution

prior to her death and some two years *after* the will execution, the same will containing paragraph 6 which Margie and Pearl argue revokes all said joint accounts.

None of the aforementioned facts tend to show that decedent intended the joint accounts for her own convenience. We find our decision in *Estate of Kuhn, supra,* 470 N.W.2d 248 to be instructive on this issue. As we stated therein:

> [Appellee] does not have the burden of proving with clear and convincing evidence that decedent intended rights of survivorship to attach to the joint account[s] she created. It is [Appellants] who ha[ve] the burden of proving with clear and convincing evidence that decedent did *not* intend rights of survivorship to attach to the joint account[s].

*Id.* at 251 (emphasis original). The trial court was not clearly erroneous in finding that Margie and Pearl failed to meet their burden, and we affirm.

### ISSUE TWO

DID THE TRIAL COURT ERR IN FINDING THAT SDCL § 30–23–46(5) MANDATES THAT EACH ACCOUNT TO BE CHANGED OR MODIFIED BY WILL MUST BE SPECIFICALLY IDENTIFIED?

At the time of decedent's death, SDCL 30–23–46(5) stated in part: "A right of survivorship ... *cannot be changed by will, unless the will expressly provides that the terms of the account should be changed or modified."* [3] (emphasis added). In construing this statute, the court stated at trial:

or that in effect at the date of the testator's death controls a will's construction or interpretation. Other jurisdictions are split on this issue. *See generally* Annotation, *Law in effect at time of execution of will or at time of death of testator as controlling,* 129 A.L.R. 859 (1940).

> The general rule seems to be, as between laws in force at different times in the same jurisdiction, that the law existing at the time the will was executed may be referred to in determining the testator's intention, *but the operative effect of the will and the rights of the parties thereunder are to be determined by law in force when the rights of the parties accrued, and this ordinarily is the law existing at the time of the testator's death, ... as against a law existing*

I conclude that the legislature intended that if a person was going to cancel a joint tenancy, that that would have to be done specifically by naming the instrument[.] ... I think that the legislature intended that if the will was going to cancel a joint tenancy, that specifically that would have to be done.

At paragraph IV of its Conclusions of Law, the trial court stated that "the language of Paragraph 6 of decedent's Will did not comply with SDCL 30–23–46(5) in that it did not expressly provide that the terms of the account be changed or modified."

 Matters of statutory construction are questions of law and thus, the decision below is fully reviewable without deference to the decision of the trial court. *State v. French,* 509 N.W.2d 693, 695 (S.D.1993); *Sander v. Geib, Elston, Frost Pro. Ass'n,* 506 N.W.2d 107, 121 (S.D.1993) (citing *Reid v. Huron Bd. of Educ.,* 449 N.W.2d 240, 242 (S.D.1989)).

"The purpose of the rules of statutory construction is to discover the true intention of law, and that intention must be ascertained primarily from the language expressed in the statute." The intent of a statute must be determined from what the legislature said, rather than what this court thinks the legislature should have said, and we must confine this determination to the language used by the legislature.

*State v. French,* 509 N.W.2d at 695. The language used by the legislature in SDCL 30–23–46(5) is unequivocal: "A right of survivorship **CANNOT** be changed by will, **UNLESS** the will **EXPRESSLY PROVIDES** that the terms of **THE ACCOUNT** be changed or modified." (emphasis added).

We agree with Katherine that, it is clear from this language that the legislature intended that each jointly-held account must be addressed individually in a testator's will in order to be changed or modified, and a generic statement in "boilerplate" form will not suffice. By amending the statute in 1990, the legislature refined the language from "clearly indicated" to "expressly provides." This statutory refinement made the intent of the legislature clear, that being that there should be no ambiguity as to which account or accounts are being changed or modified by the testator in her will.

Black's defines the term "express" to mean: "Clear; definite; explicit; plain; direct; unmistakable; not dubious or ambiguous. Declared in terms; set forth in words. Directly and distinctly stated. Made known distinctly and explicitly, and not left to inference." *Black's Law Dictionary* 521 (5th ed. 1979). "Expressly" is defined to mean: "In an express manner; in direct or unmistakable terms; explicitly; definitely; directly.... The opposite of impliedly." *Black's, supra,* at 522. We believe that the legislature intended these meanings to apply when it used the term "expressly" in SDCL 30–23–46(5). If decedent intended to revoke all joint tenancy accounts through the language in paragraph 6 of her will, she failed to use "express" terms as required by the legislature.

That the legislature intended that each account to be changed or modified by will be specifically identified is further evidenced by reference to "the terms of *the account.*" Black's defines the term "the" as follows:

An article which *particularizes* the subject spoken of. "Grammatical niceties should not be resorted to without necessity; but it

*when the will was made,* unless a contrary intent appears in the will.
129 A.L.R. *supra,* at 860–61 (emphasis added) (quoting *Reynolds v. Love,* 191 Ala. 218, 68 So. 27 (1915)); and *see* 80 Am.Jur.2d *Wills* § 1123 (1975); 95 C.J.S. *Wills* § 587(f) (1957). The majority of courts which have addressed this issue "have adhered to the rule that *the construction or operation of a will should be controlled by the law in force at the time of the death of the testator,* rather than by the law as it stood at the time the will was executed." 129 A.L.R. *supra,* at 863 (emphasis added).

Decedent specifically stated in paragraph 6 of her will that her intention in creating such paragraph was to "revoke any joint tenancies or trust arrangements commonly called 'Totten Trusts.'" The trial court was therefore not attempting to determine decedent's intention in creating paragraph 6, as this was evident from the language therein, but was instead concerned with the operative effect of this paragraph and how it affected the rights of the parties. Under the authority cited above, we find no error in the trial court's applying SDCL 30–23–46(5) as it existed at the time of decedent's death.

would be extending liberality to an unwarrantable length to confound the articles 'a' and 'the'. The most unlettered persons understand that 'a' is indefinite, but 'the' *refers to a certain object."*

*Black's, supra,* at 1324 (emphasis added). SDCL 30–23–43(1) defines "account" as "any contract of deposit of funds between a depositor and a financial institution, and includes any checking account, savings account, certificate of deposit, share account and other like arrangements." By referring to "the account," the legislature has required identification of the particular contract of deposit to be changed or modified.

If a general boilerplate provision such as that found in paragraph 6 of decedent's will were sufficient to effect a change of all joint tenancy accounts, a testator would thereafter be unable to create a donative joint account without changing her will, and would thus be deprived of this simple nonprobate vehicle for distributing her estate. Clearly, this was not the legislature's intended result when it enacted SDCL 30–23–46(5). However, if the will provision "expressly provides" which particular account is to be changed or modified and the manner in which it is to be changed or modified, this joint tenancy vehicle would remain open to the testator for distribution of assets after her will has been executed.

This interpretation of SDCL 30–23–46(5) is more consistent with SDCL 30–23–46(1), which states that sums remaining on deposit in a joint account belong to the surviving party as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created.

> We construe statutes according to their intent as determined from the statute as a whole.... This court "will not liberally construe a statute to avoid a seemingly harsh result where such action would do violence to the plain meaning of the statute under construction."

*State v. French,* 509 N.W.2d at 695. A reading of SDCL 30–23–46 as a whole makes it clear that the intention of the testator at the time the account is created takes precedence, and that under subsection (5) the legislature

intended to discredit broad-sweeping, generic changes or modifications by will without specific reference to the particular individual accounts.

Further proof of the legislature's disaffirmance of the disposition of joint tenancy accounts by will is the enactment of SDCL 30–23–47, which allows a party to change the form of a joint tenancy account during her lifetime by written request to the financial institution. It reads:

> The provisions of § 30–23–46 as to rights of survivorship are determined by the form of the account *at the death of a party.* This form may be altered by written order given by a party to the financial institution to change the form of the account or to stop or vary payment under the terms of the account. The order or request shall be signed by a party, received by the financial institution *during the party's lifetime,* and not countermanded by other written order of the same party *during [her] lifetime.*

(emphasis added). At decedent's death, all of the accounts in question were joint tenancy with rights of survivorship. There is no evidence in the record which shows that decedent gave written notice during her lifetime to the financial institutions holding the accounts, to change the form of the accounts.

As discussed in Issue Three below, it is a well established principle that the assets of a joint tenancy with rights of survivorship do not pass under a testamentary instrument, but rather pass directly upon death to the surviving joint tenants. We find that by enacting SDCL 30–23–46(5), the legislature intended to create an exception to this settled principle. However, we further find that the legislature intended this exception to be narrowly and strictly construed and that in order to fall within this exception, the testator must specifically identify each joint account to be changed or modified by will. The preferred method of changing the form of a joint account is by written request of a party to the financial institution during the party's lifetime, as set out in SDCL 30–23–47. The trial court's determination of this issue is therefore affirmed.

## ISSUE THREE

DID THE TRIAL COURT ERR IN FINDING THAT THE EXPRESS LANGUAGE OF PARAGRAPH 6 OF DECEDENT'S LAST WILL AND TESTAMENT FAILED TO EFFECTIVELY REVOKE ALL OF HER JOINT BANK ACCOUNTS IN CONFORMITY WITH THE REQUIREMENTS OF SDCL § 30–23–46?

■ Paragraph 6 of decedent's will states, "I hereby intentionally revoke any joint tenancies or trust arrangements commonly called 'Totten Trusts' by this will." "A will is to be construed according to the intention of the testator." SDCL 29–5–1. Further, "it has been the law in South Dakota since 1877 that '[i]n case of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of [her] oral declarations.' SDCL 29–5–3." *Estate of Kuhn, supra,* 470 N.W.2d at 252. " 'The general principle of [SDCL 29–5–3] . . . precludes a court from ascribing to a testator an intention her will does not express.' " *Estate of Kuhn, supra* (quoting *In re Hoisington's Estate,* 67 S.D. 280, 291 N.W. 921, 923 (1940)).

Katherine argues that this provision does not revoke the joint tenancy accounts pursuant to the requirements of SDCL 30–23–46(5), and even assuming that this was decedent's intent, the language used is simply too ambiguous, with this ambiguity being precisely what the statute was intended to eliminate. We agree.

First, this will provision could be construed to be limited to "Totten Trusts" only, and thereby intended to revoke only joint account and trust arrangements that are tentative in nature. We first discussed Totten trusts in *Matter of Estate of Bol,* 429 N.W.2d 467, 468 n. 1 (S.D.1988):

The Tentative or Totten trust was originally recognized in *In re Totten,* 179 N.Y. 112, 124–26, 71 N.E. 748, 752 (1904), wherein the court held:

A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, recoverable at will, . . .

Although at least three certificates were originally held in trust by decedent, she had no Totten trusts at the time of her death. Each account at decedent's death was a joint tenancy account. If paragraph 6 of decedent's will applied only to "Totten trusts," then it would have no effect on the joint accounts here in question.

Margie and Pearl argue that the provision was intended to cover joint tenancies *or* Totten trusts. They further argue that because no Totten trusts were in existence at the time of the will execution or at the time of decedent's death, it naturally follows that decedent's intent in including paragraph 6 in her will concerned only the joint bank accounts. However, if the reference to "Totten Trusts," is eliminated, paragraph 6 would then read: "I hereby intentionally revoke any joint tenancies by this will." The clause, on its face, would be an attempt to revoke any and all joint tenancies, whether real or personal property, and dispose of them by will. The decisions of other jurisdictions provide guidance on this factual scenario. "[A] joint tenancy account is a vehicle for the nonprobate disposition of estate assets. The method is quick, convenient, and inexpensive." *Vogele v. Estate of Schock,* 229 Mont. 259, 745 P.2d 1138, 1140 (1987). The Iowa Supreme Court has stated:

While there are several procedures for the severance or dissolution of a joint tenancy, an attempted disposition by will is not one of them. A will speaks only from the death of the testator. The death of a joint tenant terminates [her] interest and leaves no part of the joint tenancy property subject to [her] will.

*Hyland v. Standiford,* 253 Iowa 294, 111 N.W.2d 260, 266 (1961) (citing *Conlee v. Conlee,* 222 Iowa 561, 269 N.W. 259 (1936)).

In *Matter of Estate of Boldt,* 342 N.W.2d 463 (Iowa 1983), the Iowa Supreme Court construed a will provision very similar to that in the case at bar which attempted to dispose of joint tenancy property. The Iowa court, relying on its ruling in *Conlee, supra,* held

that the clause in the will purporting to revoke the joint tenancies was of no legal effect. *Id.* at 465.[4]

Similarly, *In re Will and Estate of Strange,* 548 So.2d 1323 (Miss.1989), involved a will containing the following provision:

> I will, devise and bequeath to my wife, Tyna, and my son, William Morris Strange, and my daughter, Carol Jean Strange Medlin, to share and share alike, all savings and checking accounts that are in my name and all investments in my name and Morris' name at Merrill Lynch.

*Id.* at 1324. The issue before the Mississippi Supreme Court was whether this will provision effectively destroyed the joint tenancy account created by decedent in his name and the name of his son. The court stated:

> The parties have not cited, nor do we find, any Mississippi case dealing with the precise issue presented by this appeal, *i.e.,* whether a testator can, by will, dispose of property which he placed, during his lifetime, in a validly created joint tenancy account with rights of survivorship. Joint accounts with survivorship provisions are widely relied upon as will substitutes along with other will substitutes such as life insurance, pension plans, etc. Therefore, the impact of today's decision is of great importance to the citizens of this state, as well as banking and commercial institutions.

*Id.* at 1325. The trial court found that the account was not a valid inter vivos gift, but rather "an implied trust ... with Morris Strange acting as Trustee." The Mississippi Supreme Court reversed, stating:

> [T]he creator of a joint tenancy with rights of survivorship does not relinquish control of the account, but, rather, divides control with the joint tenant. Each joint tenant manifests a strong interest therein so long as he lives. Immediately at the death of one joint tenant, the decedent's interest vests at that time in the other joint tenant(s).

*Id.* at 1326. The court then cited several cases which followed the general rule that "where a joint tenancy account in a bank is made payable to either depositor or survivor, the account passes to the survivor upon the death of a joint tenant." *Id.* at 1327–28. The Mississippi court concluded:

> Absent from the above cases is the situation where the creator of a joint tenancy, or a joint tenant, subsequently executes a last will and testament disposing of the joint tenancy funds to some other source. The answer has to be, and is, that the subsequent will does not destroy the joint tenancy and does not terminate that tenancy and divest the corpus of it into the estate of the testator. In that respect, the joint tenancy differs from the tenancy in common.

4. In *Boldt,* the decedent was survived by two daughters, Jeanne and Friederike. At the time of her death, most of decedent's accounts were in joint tenancy with Friederike. Decedent had made prior wills in which she had divided her property with substantial equality between the two daughters. Decedent's last will first directed payment of debts, and contained the following paragraph II:

> I give, devise and bequeath all of the rest and residue of my property, whether such property be real, personal or mixed, and whatsoever kind and character and wheresoever situated, to my two children, Jeanne M. Vogel and Friederike Boldt, the survivor or survivors thereof. *I hereby revoke any joint tenancies that I might have created in the past with either of the beneficiaries as they made no contribution to the joint tenancies and the joint tenancies were created as a convenience for myself.* It is my will that my personal belongings be divided equally, but in value only, and that matching sets or items not be broken up, but

> evaluated and go as a unit to one or the other beneficiary. The beneficiaries know the various items that I desire each to have, and I expect them to honor my wishes.

*Id.* at 464 (emphasis added). In addition to the express language of paragraph II of decedent's will, the will scrivener testified that decedent "wanted the two daughters to share equally." The court, relying on the express language of decedent's will and the testimony of the will scrivener, concluded that it was decedent's "clear intent" to devise the joint tenancy accounts, and ruled that the Doctrine of Election applied. Friederike was thus required to elect between taking under the will as it was or rejecting it. *Id.* at 465–68. We do not reach the same conclusion as the Iowa court however, because unlike the facts in *Boldt,* the decedent in the case sub judice has expressed no "clear intent" with regards to the joint tenancy accounts. To the contrary, paragraph 6 of decedent's will is ambiguous and far less specific than that created by the decedent in *Boldt.*

*Id.* at 1328. We find the language from these decisions to be equally controlling in the case at hand.

Finally, we are required to construe the will according to the intent of the testator, and this intent is to be derived from the words of the will and the surrounding circumstances. As we stated in Issue One, if decedent's intent was to revoke all of the joint tenancy accounts, she surely would not have continued to create them after the will was executed. Further, if we were to accept Margie and Pearl's argument that, despite the ambiguous nature of the language in paragraph 6 of the will, it acted to effect revocation of all joint bank accounts existing at the time of decedent's death, the result would be to disinherit a nephew and two nieces of decedent. Each was named as a joint owner on a certificate of deposit, but received no corresponding gift in the will. We do not believe this to be decedent's intention when viewed in light of the circumstances surrounding the execution of the will and events thereafter.

Paragraph 6 of decedent's will is sufficiently ambiguous that when we look at the circumstances surrounding the creation of the accounts, the time frame over which the accounts were created, the relationship of Katherine to decedent, the net effect of revocation of the joint accounts upon decedent's relatives other than Katherine, and the requirements of SDCL 30–23–46(5), we can only conclude that paragraph 6 of decedent's will has no legal effect on the joint tenancy accounts. We therefore affirm the judgment entered by the trial court on all issues.

MILLER, C.J., WUEST and SABERS, JJ., and HENDERSON, Retired Justice, concur.

DOBBERPUHL, Circuit Judge, for AMUNDSON, J., disqualified.

KONENKAMP, J., not having been a member of the Court at the time this case was submitted, did not participate.